The President and Directors of the Manhattan Company, Respondent, *v.* Richard H. Laimbeer, Impleaded, etc., Appellant.

The filing with the county clerk of the certificate and affidavit required by the provisions of the statute in relation to the formation of limited partnerships (1 R. S., 764, §§ 4, 5), is sufficient to form such a partnership, and the omission of the clerk actually to record the certificate does not render a special partner liable as a general partner for the debts of the firm ; the record must be assumed to be made when the certificate is delivered to the clerk for the purpose of record.  (Gray, J., dissenting.)

*Smith* v. *Argall* (6 Hill, 479 ; 3 id., 435); *Van Ingen* v. *Whitman* (62 N.Y. 513) ; *Durant* v. *Abendroth* (69 id. 148 ; *S. C.,* 97 id. 132) ; *Gray* v. *Gibson* (6 Mich. 300) ; *Frost* v. *Beekman* (1 J. Ch. 288) distinguished.

*President, etc.,* v. *Laimbeer* (21 J. & S. 22), reversed.

(Argued February 6, 1888 ; decided March 6, 1888.)

Appeal from judgment of the General Term of the Superior Court of the city of New York in favor of the plaintiff, entered upon an order made January 6, 1886, which overruled defendant's exceptions, denied a motion for a new trial and directed a judgment on a verdict.  (Reported below, 21 J. & S. 22.)

This action was brought against defendants as members of the firm of Phillips & Co., to recover an indebtedness of that firm.

Defendant Laimbeer alone appeared and answered, alleging that the firm was a limited partnership, duly formed under the statute ; that he was a special partner, and so not liable as a general partner.

It appeared that the certificate and affidavit required by the statute providing for the formation of limited partnerships

{1 R. S., 764, §§ 4, 5, *et seq.*) were made and filed with the county clerk, but the certificate was not actually recorded by that officer.

*Benjamin F. Tracy* for appellant.   Defendants having left to be filed the certificate of formation of the partnership, together with the affidavit of payment, and the same having been filed, and having paid the fees for both filing and recording, defendant Laimbeer cannot be charged as a genera partner.  (Laws of 1822, chap. 244, §§ 6, 7, 8, 12.) When a statute is revised and parts of the former statute omitted from the statute revising it, the parts so omitted are to be deemed annulled and cannot be revived by construction. (*In re Southworth*, 5 Hun, 255 ; *Ellis* v. *Page*, 1 Pick. 45 ; *Lyon* v. *Smith*, 11 Barb. 124, 126 ; *Moore* v. *Mausert*, 49 N. Y., 332 ; *People* v. *Board of Assessors*, 84 id 610.) When the defendant presented to the county clerk the partnership papers to be filed and recorded, and paid the fee for filing and recording the same, there remained nothing more that he could do in order to comply with the statute.  The rights of partners cannot be impaired by the omission of a public officer to perform his duty.  (*Dodge* v. *Potter*, 18 Barb. 202 ; *De Forrest* v. *Baker*, 1 Abb. Pr. [N. S.] 32 ; *Veeder* v. *Mudgett*, 95 N. Y. 295, 309, 315 ; *Sutherland* v. *Olcott*, 29 Hun, 161 ; *Wood & Brown's Appeal*, 82 Penn. St. 116.) The direction of the statute requiring the clerk to number and index the mortgages under the act relating to chattel mortgages, and to record the certificate of full-paid stock filed by the directors of the company, under the act of 1848, and to record at large the certificate filed by the partnership under the act relating to limited coparnerships, are all directory merely, and a failure of the clerk to perform this duty cannot prejudice the rights of private parties.  (*Rex* v. *Loxdale*, 1 Burr, 447 ; *Wodd* v. *Chapin*, 13 N. Y. 509, 515 ; *Marchant* v. *Langworthy*, 6 Hill, 646 ; *Striker* v. *Kelly*, 7 id. 9, 24 ; *Jackson* v. *Young*, 5 Cow. 269 ; *People* v. *Peck*, 11 Wend. 611 ; *Rochester Sav. Bk.* v. *Averill*, 96 N. Y. 467 ; *Henkel*

v. *Heyman*, 91 Ill. R. 96 : *Pferman* v. *Henkel*, 1 Bradw. R. [Ill. App.] 145, 150.)

*Nathaniel Myers* for respondent. As the statute in respect to limited partnership grants a special privilege, and as its various provisions are intended to give all possible publicity and certainty and security for the benefit of the public, its provisions should all be strictly construed as against the members of the firm. (1 R. S. 764, §§ 6, 7, 8 ; *Haviland* v. *Chase*, 39 Barb. 283 ; *Durant* v. *Abendroth*, 41 Supr. Ct. Rep. 59 ; affirmed, 69 N. Y. 148 ; affirmed, 97 id. 132 : *Argall* v. *Smith*, 3 Den. 435 ; 6 Hill, 479 ; *Van Ingen* v. *Whitman*, 62 N. Y. 513, 520, 523 ; *Pierce* v. *Bryant*, 5 Allen, 91, 93.) The provision of the recording act "that every conveyance entitled by law to be recorded * * * shall be considered as recorded from the time of such delivery " to the county clerk, was enacted for the purpose of establishing the priority between conveyances. (*Frost* v. *Beekman*, 1 John. Chan. R. 288 ; *N. Y. L. Ins. Co.* v. *White*, 17 N. Y. 469 ; *Gillig* v. *Maass*, 28 id. 191.) There was no error in denying defendant's motion for leave to amend, and the discretion of the court in so doing is not reviewable here. (*Brown* v. *McClure*, 5 Sandf. 224 ; *Ruth* v. *Schloss*, 6 Barb. 308 ; *Hunt* v. *Ins. Co.*, 2 Duer, 481 ; *Johnson* v. *Oppenheimer*, 34 Super. Ct. R. 416 ; affirmed 55 N. Y. 280.) Defendant having stated upon what questions he wanted to go to the jury, his rights upon appeal are not enlarged under a general exception to the direction of the court to find for the plaintiff. (*Winchell* v. *Hicks*, 18 N. Y. 558 ; *O'Neill* v. *James*, 43 id. 84 ; *Barnes* v. *Perine*, 12 id. 23.)

PECKHAM, J. Unless the courts below were right in holding that the filing of the certificate with the county clerk, in the absence of the recording thereof, was insufficient in order to form a limited partnership under the act, this judgment must be reversed, because there was undoubtedly evidence enough in the case to go to the jury upon the question of fact whether

or not the certificate and affidavit provided for in the act were filed with the county clerk and the certificate left with him for the purpose of being recorded and the fee therefor prepaid. Enough was done to make the filing of the papers complete, if the evidence of the boy was to be believed. A paper is said to be filed in a public office when it is delivered to the proper officer and by him received to be kept on file. (Bouvier's Law Dict. Vol. 1, p. 587.)

It is not necessary that the party handing the paper to the officer should see that he makes the proper indorsement or entry. A verdict was directed by the court in favor of the plaintiff in this action based upon the assumption that the failure of the county clerk to record the certificate provided for in the act, and which was to be filed and recorded in his office, prevented the formation of a limited partnership and left the parties who attempted to form the partnership liable as general partners. Under this holding the defendant has been made liable to the extent of nearly $60,000, for debts incurred by the general partners after the special partner had done all that he could do to comply with the terms of the statute, or in other words after the certificate required by the statute had been acknowledged, and after the necessary affidavit had been made and after they had both been filed in the office of the county clerk, and after, as matter of fact, the amount of money required to be contributed by the special partner had been paid in cash.

Under such circumstances to hold the defendant liable as a general partner for the failure of a public officer to do an act, the doing of which at any particular moment the defendant had no power to compel, works a very severe administration of the statute and is a construction not called for by the language when reasonably interpreted, and is contrary to what it seems to me is a fair public policy, as it makes one man liable for the default of another, and he a public officer over whose actions he has no immediate and efficient control.

It is said that this special partnership is a privilege granted, and is an exemption from the general liability of partners at

common law, and so the statute must be strictly construed, and all its provisions fully and even technically complied with before such exemption can be claimed. In one aspect of course it is a privilege, because at common law no such partnership could be formed, but at the same time the granting thereof accords with the policy of a commercial community, because it tends to the enlargement of business transactions to permit men under certain reasonable conditions to do business with a restricted liability, who without such restriction would suffer a portion of their capital to remain unemployed, rather than risk their whole possessions under the broad liability of a general partnership. Therefore acts providing for the formation of a limited partnership should receive a reasonable construction, not such as to make its formation almost impossible, and not such that where the slightest and most innocent (and to third persons an entirely harmless) deviation from the strictest construction that can be given to a statute shall work results to the special partner of possibly a most disastrous and utterly ruinous nature, including liability for enormous debts incurred by the general partners where the credit given was not in the least based upon any assumed liability of the special partner greater than the capital he had contributed.

The earliest statute upon the subject of the formation of limited partnerships is that of the act of 1822. It may be well to compare the provisions of that act with the one enacted in the Revised Statutes for the purpose of seeing what if any change has been made by the latter act.

The important provisions contained in the act of 1822, in relation to the formation of such partnerships, are that before such a partnership can be formed there must be a certificate signed by the partner containing (1.) name of the firm; (2.) the names of all the general and all the special partners; (3.) amount of the capital furnished by the special partner; (4.) the period when the partnership is to commence and terminate. There is also to be an affidavit made by one or more of the general partners stating the actual payment in cash of the sum

advanced by the special partner. The certificate above mentioned is to be registered in a book to be kept for that purpose, at all times open for public inspection in the office of the clerk of the county in which the principal business of the partnership shall be carried on; but this registry shall not be made by the clerk of the county, or be considered valid unless all the partners, general and special, associated together in any such partnership shall make a certificate containing the statements above set forth, which certificate is to be filed of record in the clerk's office. It is made the duty of the partners to publish the terms of such partnership so registered for at least six weeks after such registry in two papers. By the eighth section of this statute it is among other things specially made the duty of the partners interested in any such partnership to see that the requirements of the sixth, seventh, eighth and twelfth sections of the act (which required the certificate and affidavit and registry, etc.), are complied with, and in case the same shall be neglected or a false registry be made all the parties interested in such partnership shall be liable for all the engagements thereof as general partners. By the sixth section of this act it is seen that the registering of the certificate mentioned in the twelfth section is to be made in a book to be kept for that purpose at all times open to public inspection in the office of the clerk of the county, and the eighth section of the act specially casts upon the partners interested in the partnership the duty of seeing that this registry is made, upon pain of making all the partners interested therein liable for all the engagements of the firm as general partners.

From the time of the passage of this act of 1822, it remained substantially in that condition until the adoption of the Revised Statutes, when the act was recast. But in the Revised Statutes, although different language is used in many parts of it, yet the same general requirements are made for the formation of such a partnership. The certificate is to be made as provided for in the act of 1822, and the same information is to be given in it, with the addition that there is also to

be stated the general nature of the business intended to be transacted by the co-partnership. This certificate is to be acknowledged as provided for in the act of 1822, an affidavit is also to be made by one of the general partners and to be filed in the office of the county clerk, stating that the sums specified in the certificate have been contributed by each of the special partners to the common stock, and in good faith and actually paid in cash. But instead of the simple provision for the registering of the certificate in a book in the office of the clerk of the county, the Revised Statutes (§ 6), provide that the certificate thus acknowledged, etc., shall be filed in the office of the county clerk, and shall also be recorded *by him*, at large, in a book to be kept for that purpose open to public inspection, and the duty is not, in terms, cast upon the partners, of seeing that such record is made. In this respect, it seems to me there is a very material difference in the requirements of the two acts. The act also provides for the publication in two newspapers of the terms of the partnership as provided for in the act of 1822, and there are other provisions in both acts relating to the workings of the partnership which are substantially similar, and in almost the same language. The sixth section of the act of 1822, provides that before any partnership under that act shall be carried into effect, the things above provided for shall be done ; and among them is the registering of the certificate. The duty to see that the registry is made, having been specifically and in plain terms cast upon the partners, it might, perhaps, be justifiable to hold them liable under this section, until such registry is made. Under the Revised Statutes, however, the question is entirely different. It is true that the eighth section states that no such partnership shall be deemed to be formed until a certificate shall be made, acknowledged, filed and recorded, nor until the affidavit shall have been filed as above directed. But the question is what was the real meaning of the legislature in using that language, while leaving out the provision making it the duty of the partners themselves, to see to the recording of the certificate. Did it mean the strict technical

and physical act of recording at length the certificate in the book, or did it mean what is usually meant in using the word "recorded" in the statutes, that is until it shall have been filed and left for the purpose of being recorded? Or in other words, until all shall have been done by the individual interested in the performance of the act that he could do, and where the further act to be done is the act of a public officer, over whom no prompt or immediate control could be exercised by the individuals interested, and for whose action or lack of action they ought not to be suffered to sustain a loss.

In the matter of deeds and mortgages, it is constantly spoken of that such papers are recorded when left at the clerk's office for such purpose; the theory of the law being that the record is made when delivered to the clerk for that purpose. The record is then considered to have been accomplished, and the physical act of transcribing the contents of the paper into a book, at length, is to be performed by the public officer; and it seems to me to be contrary to reason and to principle, to hold an individual bound to such grave liabilities, as this case is an example of, founded upon the failure of a public officer to do an act prescribed by the statute.

By this statute the certificate is to state, among other things, the period at which the partnership is to commence. If no such partnership can be deemed to be perfected until the certificate is not only filed, but absolutely recorded at length in a book by the county clerk, it would be impossible to state with truth or accuracy in the certificate this time of commencement. The parties may intend that the partnership shall commence the next day after the certificate is filed for record, but unless actually recorded before or by that day, according to this interpretation of the statute, the partnership does not commence and the certificate would be false.

In many counties of the state the clerk is largely behind in the matter of the actual, physical recording of papers left in his office therefor. In this very county where this court now sits, the clerk has been from one to three months behind hand,

and is it fair to those who are desirous of forming a limited partnership to so construe the statute that, although they may desire to commence business on the first of January, and for that purpose file their certificate on the thirty-first of December previous, yet they shall not be deemed to have thus formed such partnership because the clerk has not recorded the certificate, and which, perhaps, he may not record until three months thereafter? It is said that there are not a great many of this class of papers left for record, and that, therefore, they might be recorded with great dispatch. Undoubtedly they might be; but the question is, can the clerk be compelled by *mandamus* to record such papers one hour ealier than other papers which came in ahead of them for record? It is his duty to record them all, and can the court say that because the paper is a short one he shall record it immediately and in advance of a paper filed a week, a month, or, perhaps, three months ahead of it? In other words, is not the clerk doing all that he can be compelled to do when he records papers as of the day when they were left for record, as soon as he reaches them in the regular discharge of his duties? It seems to me so; and yet during all this time the partnership does business at the peril, as to the special partner, of having it declared a general one, and the statement in the certificate as to when this partnership is to commence may be false, owing to a failure of the clerk to make this record, or the special partner, unwilling to take this risk, may endeavor to avoid it by refusing to allow any business to be done until that record is made. Although how he can carry out such refusal, or how he can prevent any business being done during this time by the general partners is a little difficult to understand.

All this difficulty is avoided by holding what it seems to me is the fair and plain intention of the legislature, viz., that when the parties have done all that they can do in the way of complying with the terms and conditions of the limited partnership act, and when all that remains to be done is for a public officer (entrusted with the care and custody of the papers filed with him) to perform the duties placed upon him under the

provisions of the law, it must be regarded as a compliance by the parties interested with the terms of the statute, and the record must be assumed to be made when the paper goes for the purpose of record out of the control of the individual into the control of the public officer.

It is said that the same reasoning would apply to the publication in the newspapers of the terms of the partnership as provided for by the act. But it seems to me an entirely different principle applies there. The duty of making the publication is cast upon the partners, and there is no obligation on the part of the publisher of the paper as there is on the part of the public officer to do anything. Again it is matter of private contract between the partners and the publishers of the newspaper, and in that way it is within the power of the partners to see to it that the publication is made within the time required in the statute, and that it correctly states the terms of such partnership. However, the effect of a failure to publish is not now before us.

It is true that in the general construction and interpretation of the statute in relation to limited partnerships, courts have inclined to exact a rigid performance of the substance of the statute from those desirous of availing themselves of its benefits. But in all the cases that my attention has been called to and in all that I have been able to find, where the individual has been held liable for a failure to comply with the terms of the statute, such liability has been based upon a failure to do that which the statute called upon the parties interested, or some of them, to do, and not upon the failure of a public officer to do an act which the statute provided that he should do. Thus in the case of *Smith* v. *Argall* (6 Hill, 479), the publication of the terms of the partnership made in one of the newspapers stated that the special partner had contributed $5,000, when in fact he had contributed only $2,000. It was not claimed that there was any fraud in the statement, but simply a mistake; and as the law cast the duty upon the partners to make the publication, a failure to make it correctly rendered the defendant liable as a general partner. That case is again

reported on appeal in 3 Denio, 435, where, as the main ground for holding the defendant liable as a general partner, the court stated that "the duty of making such publication is by the statute devolved upon the partners."

In *Van Ingen* v. *Whitman* (62 N. Y. 513), the special partner did not as matter of fact contribute $30,000 in cash to the general fund as the certificate stated. There were certain assets which he owned in an old partnership, and he empowered one of the general partners to turn them into cash which was to be contributed as his payment and treated as cash, the firm being solvent. But this court held that that was not a compliance with the statute, which required that the payment should be made in cash. Here again the liability rested upon a failure of the individual to do that which the statute required that he should do. It was his own act, or rather his own failure to act for which he was held responsible.

Then there is the case of *Durant* v. *Abendroth* (69 N. Y. 148). There the partnership was to commence on the first of January, which happened to be Sunday. The articles of co-partnership were drawn up and the certificate and affidavit made on the twenty-third of December, upon which day the special partner gave his check for the amount he was to contribute, dated the thirty-first of December, and the certificate and affidavit were immediately filed. The check was paid on the second of January, the first banking day of the new year, and the cash was thereby paid into the partnership before one particle of business was done under its terms. This court, however, held that the affidavit was false when made because at that time payment in cash had not been made but a post-dated check was given in lieu thereof, and after such check was paid no affidavit was made of the contribution in cash of the amount to be contributed by the special partner. Here again the defendant was held liable because of his own failure to fulfill and comply with the terms of the statute. He had full power to pay in cash at the time the affidavit was made, and if he failed it was his misfortune. I think it was a very

stern and technical application of the statute, because confessedly before one particle of business was transacted by the firm, and on the earliest possible day after the commencement of the term of partnership at which it could be done, the check was paid and the cash contributed by the special partner to the general fund.   It does not seem to me as if the principle of that case should be extended.   Church. Ch. J. and Earl, J., dissented from the decision thereof, and Allen, J., did not sit.   Upon a subsequent appeal reported in 97 N. Y. 132, the doctrine is reiterated.

A substantial compliance with the terms of the statute, even in the case of a limited partnership, has, upon one or two occasions been held sufficient.   Thus in *Bowen* v. *Argall* (24 Wend. 496), a publication of the names of the partners was made in which the name of one partner was printed Argale instead of Argall, and the court held that in the absence of any evidence that anybody was misled by it the mistake was unimportant, and if there were any such evidence it would have been a fair question for the jury.

Again in *Madison County Bank* v. *Gould* (5 Hill, 309), the period of the commencement of the partnership was erroneously stated as November sixteenth instead of October sixteenth in the newspaper.   In the absence of evidence that any one was injured that was also held to be an unimportant mistake, and that the statute was substantially complied with and the special partner not liable.   Some cases in other states have been referred to on the argument in relation to the construction to be given to this act, but upon examination I do not see that very much light is thrown therefrom.

The case of *Gray* v. *Gibson* (6 Mich. 300), does not discuss the question at all.   It assumes the fact to be as stated in the opinion and then decides some other question.   That was a case where they attempted to prove a general partnership as between the plaintiffs themselves by proving an attempt to form a special partnership and a failure to record the certificate. The court held such facts did not prove that the plaintiffs were partners as between themselves.   At the same time it assumed

that the failure to record the certificate would have rendered plaintiffs liable as general partners as to third persons.

The case of *Hinckle* v. *Haymen* (91 Ill. 96 ; affirming S. C. 1 Brad. Ill. R. 145), assumed that the failure of the clerk to record the certificate would not render the special liable as a general partner. In that case the certificate had been taken to the clerk's office for the purpose of being filed and had then been withdrawn ; and the court held it was not filed within the meaning of the act. Those are the only cases outside of the state to which my attention has been called, and the only ones I have found upon the subject. One might be said to off-set the other and neither contributes anything toward a proper solution of the question in hand.

In this state some cases have been decided by the Supreme Court which are somewhat analogous to the one now under discussion. By the statute every chattel mortgage, under the circumstances therein named, is absolutely void as against the creditors of the mortgagor and subsequent purchasers and mortgagees in good faith unless the mortgage or a true copy thereof be filed as directed in the act. It is made the duty of the clerks of towns in whose office chattel mortgages are required by the act to be filed, to provide proper books in which the names shall be entered in alphabetical order, of the parties to every mortgage and also to indorse them on the back and to enter the number in a separate column in the books in which the mortgages shall be entered. Yet in the cases of *Bishop* v. *Cook* (13 Barb. 326), *Dodge* v. *Potter* (18 id. 193), and *Dikeman* v. *Puckhafer* (1 Abb. N. S. 32), it was held that the failure of the clerk to do these things did not affect the rights of the mortgagee as he had done all that he could do when he delivered the mortgage to the clerk to be filed, and that he ought not to be held liable for the default of the clerk, a public officer, over whose acts he had no control. The cases are not precisely similar to the one under consideration, and yet the principle of non-liability for the default of a public officer under circumstances somewhat similar is announced and I think correctly maintained.

Plaintiff cited the case of *Frost* v. *Beekman* (1 John. Ch. 288) as an instance where the courts have held an individual bound by the neglect of a public officer. The case was where the record of a mortgage mistakenly stated its amount as $300, instead of its actual sum of $3,000, and the mortgagee was held bound by the record in favor of a subsequent *bona fide* purchaser relying on the record as correct.

The case is entirely unlike the one under consideration. The very life of the system of recording titles and incumbrances thereon depends upon the fact of the record itself being a sufficient source of information for a subsequent *bona fide* purchaser or incumbrancer, and unless such were the case it would be practically useless to have a record. A mortgagee knows this and hence is responsible for the truth of the record, as it must be assumed he knows its contents, and knowing it, still allows others to deal with the property on the faith of the correctness of such record. He might fairly be said to be estopped from denying the correctness of the record, on the principle applicable to an estoppel *in pais*.

The case is peculiar and stands on principles which call for such a decision at the peril of otherwise losing most of the benefits to be derived from a record of titles or incumbrances. It will be noticed the mortgagee is not liable for a failure of the clerk to record at all, but only for a false record. He can easily call the attention of the clerk to the mistake, and it may be instantly remedied; but in the case at bar the partners cannot, as I have shown, compel an immediate record of the certificate. It seems to me the principle of holding an individual responsible for a default of a public officer, should not be extended to a case such as is under consideration here. But I think that this court has decided the principles involved in this case in accordance with the views which I take of this statute. I refer to the case of *Veeder* v. *Mudgett* (95 N. Y. 295). That case arose by reason of an attempt to enforce the liability of the defendants under the general manufacturing act of 1848. Chapter 40, section 10 of that act provided, that " all the stockholders of every company incorporated under

this act, shall be severally and individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of the stock held by them respectively for all debts and contracts made by such company, *until* the whole amount of the capital stock fixed and limited by such company shall have been paid in, and a certificate thereof shall have been made *and recorded* as prescribed in the following section, and the capital stock so fixed and limited, shall all be paid in, one-half thereof within one year and the other half thereof within two years from the incorporation of said company, or such corporation shall be dissolved."

The eleventh section of said act reads as follows: "The president and a majority of the trustees, within thirty days after the payment of the last installment of the capital stock so fixed and limited by the company, shall make a certificate, stating the amount of the capital so fixed and paid in, \* \* \* and they *shall, within the said thirty days, record the same* in the office of the county clerk of the county wherein the business of the said company is carried on."

The company in which the defendants were stockholders in that case was incorporated by the filing of a certificate February 8, 1868, in the Monroe county clerk's office, and on the 31st of March, 1868, in the office of the secretary of state. The capital was stated as $200,000. There was an attempt made to increase the capital stock and certain stock was issued; but the facts concerning the same are not material here. The first and only certificate ever made in regard to the payment of the capital was made January 13, 1873, and that certified that the capital stock was fixed and limited at $300,000, and that the whole amount was paid in before January 1, 1870. This was found to be untrue as to the $300,000, but true as to the $200,000 of the capital. The certificate thus signed by the president and trustees of the company was delivered at the Monroe county clerk's office January 13, 1873, for record; but by the default of the clerk it was not recorded until June 22, 1880, after the commencement of the action against the defendants. The indebtedness of the corporation in which

the defendants were stockholders accrued from a sale to the corporation of a quantity of iron on the 4th of May, 1877, after the filing of the certificate it will be seen and before it was recorded.    The iron was delivered to and accepted by the company between May 22 and September 26, 1877.    Notes were given for the amount, which were unpaid at maturity and within a year thereafter an action against the company was commenced, a judgment obtained and execution issued and returned unsatisfied; and all of this happened before the recording of the certificate in the clerk's office.    Here is a statute providing for the continued liability of stockholders until the whole amount of the capital stock should have been paid in, and a certificate thereof made and recorded in the office of the county clerk of the county where the business of the company was carried on.    It was claimed that this exemption did not attach to any of the defendants, because the certificate provided for was not made until after the lapse of thirty days after the payment of the last installment of the capital stock, nor was it recorded until long after thirty days from the payment of such capital stock, and long after the company incurred the debts spoken of.    This court held that the provision that the certificate as signed, and sworn to by the president and a majority of the trustees should be recorded in the county clerk's office within thirty days after the payment of the last installment of the capital stock, was directory only, and that when filed, although after the expiration of the thirty days, if the certificate were true it gave the exemption from further liability provided for by the statute; and the court further decided that upon the facts found by the referee that the omission to record the certificate was wholly the fault of the clerk who was directed to make the record, the defendants ought not to be prejudiced by the omission; that their duty was done when the certificate was filed.    With that opinion concurred RAPALLO, MILLER and EARL — Judges RAPALLO and MILLER on the ground that none of the defendants was liable for the old stock held

by them, and none of them was liable for the default to pay
the increased stock.   They thus necessarily concurred with the
learned judge who delivered the opinion of the court in
the two statements that the law was directory as to the thirty
days and that the defendants were not to be prejudiced by the
default of the clerk in failing to record the certificate as pro-
vided in the statute.   Here is a judgment of this court in favor
of the proposition that while the act provided that the liability
of stockholders should continue until this capital·stock was
paid, and until the certificate stating that fact should be signed
and sworn to by the president and a majority of the trustees
and until it should be recorded in the office of the county
clerk, yet where the certificate was made and delivered to the
county clerk for record, the liability of the stockholders ceased
at that moment, and the failure of the clerk to make the record
as provided for in the statute did not result in retaining the
liability of the stockholders, notwithstanding the general
language of the statute that this liability should remain until
the certificate was made and recorded.   I confess I am wholly
unable to see any distinction in principle between these two
acts.   I am unable to see how, if a record of a certificate is
necessary in the one case why it is not equally necessary in the
other.   And as this court has decided that it is not necessary
in a case arising under the manufacturing act, I am unable to
perceive any valid reason why it should be necessary in case
of a limited partnership.   The statute is no more peremptory
in the one case than in the other, and there is no more reason
for holding a liability in the one case than in the other.

The learned judge who delivered the opinion of the General
Term in the case, attempts to make a distinction in principle
in these two cases.   He says   "The omission to file and
record a certificate of the payment of the capital stock in pur-
suance of section 11 of the act, did not touch the question of
corporate life.   The corporation existed whether the certificate
was or was not filed.   The omission to file and record the
paper, affected the continuance of the stockholders' liability
determined by a previous section of the act."   It is plain, of

course, that the omission to file and record this certificate did not touch the question of corporate life. But of what importance is that? The individual liability of these stockholders commenced with the very commencement of the corporate life, and by the statute was to terminate upon the happening or performance of certain conditions, one of which was the recording in the clerk's office of the certificate provided for in sections 10 and 11, until which time the liability was to continue. Now, whether corporate life was affected or not, it seems to me, is of no sort of account. The question is, what was meant when the legislature said that this individual liability of stockholders was to continue until certain things had been done, among others, recording the certificate? If it meant that the liability was to remain until the actual, physical act of recording had been performed, the question whether corporate life was touched or not is wholly immaterial, and upon the question of its meaning, the fact that it does not affect corporate life is also immaterial. The point decided in the *Veeder case* was not alone that the statute was directory, in relation to the filing of the certificate within thirty days. That was one proposition that was involved. The other proposition was equally involved and especially fatal if decided the other way. The necessity of filing the certificate within thirty days from the time of final payment of the capital stock was held directory, but it was also plainly and necessarily held, in order to secure any exemption, that the failure to record the certificate did not prolong the individual liability of the stockholders. It was after the certificate was filed, and three years before it was recorded, that the corporation incurred the liability for the iron, which the action was brought to enforce against the stockholders. Had it been held that the filing of the certificate in 1873, was not sufficient to terminate the individual liability of the stockholders, until the certificate was recorded, that liability would have lasted until 1880, and every one of the defendants would have been held individually liable under the provisions of that act.

The learned judge at General Term also says that " it is quite

clear to us that the substance, scope and policy of the act. concerning limited partnerships, differ wholly from the portion. of the manufacturing act considered above." They are. sections 10 and 11 of the manufacturing act to which the. learned judge refers.    It is not difficult to say that the substance,. scope and policy of one act differs from another.    But what I entirely fail to see is the difference in principle, as there is. scarcely any difference in language between these two acts,. each of which requires, as a condition for the termination, in. the one case of the individual liability of the stockholder and. in the other of a liability as general partner, that a certain. act or series of acts shall be done, and each statute requires as. a part of that condition the recording of the certificate.    Now to hold that it means in the one case that the certificate shall be recorded at length by the public officer in order to terminate. the liability of the individual as a general partner, while in the. other the same language grants a termination of such liability. upon the filing of the paper for record without any such record. being made, would be to my mind in effect to decide both ways. in the same case.

On a line with the decision in the *Veeder case* although prior in point of time, is that of *Cameron* v. *Seaman* (69· N. Y. 396), which involved the proper construction of section. 12 of the manufacturing act of 1848.    The trustees had signed a report within the twenty days from the first of January, but. it was not filed in the clerk's office until January twenty-second nor published until January twenty-fourth, and the contention. was that both should have been done within the twenty-days;. and for such neglect it was claimed the trustees were liable. This court held otherwise, and said per Andrews, J.: "If the publication and filing must be also made within the twenty· days in order to protect the trustees from personal liability, very serious burdens might be imposed upon them *without their fault*.    The neglect of a newspaper to publish the report, although it was furnished for publication within the twenty days and in due time for its insertion in its regular issue, would not protect the trustees against the statute liability.    They

would be made, upon the construction of the statute contended for, *liable for the neglect of persons over whose conduct they had no control*." See also *Butler* v. *Smalley* (101 N. Y. 71).

I see no reason whatever for establishing a different rule in regard to the formation of limited partnerships, for the purpose of terminating the liability of the individual as a general partner from that which is held in relation to manufacturing corporations for the purpose of terminating the individual liability of stockholders.

The judgment should be reversed and a new trial granted.

Gray, J. (dissenting).    The court having refused to submit the case to the jury, all intendments must be for the appellant; and he must be considered as having done all that the statute required of him up to and including the act of depositing with the county clerk the papers which, under the provisions of the law, were to be filed in his office.    The appellant's counsel contends that after depositing with that officer the certificate of the formation of the limited partnership and the affidavit of the payment of the sum contributed as special capital, the party, seeking to avail himself of the provisions of the statute in question, has done all that is required of him and that he cannot in fact file them, nor can he record the certificate, the performance of those acts being a duty devolved by law upon the county clerk.    It is claimed that the precise point upon which our judgment is thus asked is without precedent in this state.    It may be that the words of the statute, to which counsel particularly directs our attention, have not precisely received judicial exposition; but the controlling principles for the construction of the statute have been sufficiently laid down to support the views we shall express, if its plain reading were not sufficient for that purpose.

The statute, upon the construction of which appellant's case must succeed or fail, after stating for what purposes a limited partnership may be formed and the contents of the certificate which the persons proposing to enter that relation shall make, in its sixth section, requires that "the certificate   *   *   *

shall be filed in the office of the clerk of the county in which
the principal place of business of the partnership shall be
situated, and shall also be recorded by him at large in a book
kept for that purpose, open to public inspection." In its.
seventh section it requires to be filed in the same office, and
at the same time of filing the certificate, an affidavit of a general
partner as to the actual cash payment of the special capital.
Its eighth section is as follows: "No such partnership shall be.
deemed to have been formed until a certificate shall have been
made, acknowledged, filed and recorded, nor until an affidavit.
shall have been filed, as above directed." (See §§ 6, 7 and 8,
tit. 1 of Chap. 4 of part 2 of Revised Statutes.)

Obviously our consideration of these provisions of the law
is confined to the force and effect to be given to the language.
of the eighth section, and to the extent to which we shall
literally interpret the expressions of the legislature. The:
words themselves are plain and unambiguous, and the lan-
guage does not seem to be lacking in strength. It is argued
for the appellant that because of the omission in the revision
of the statutes of a provision of the act of 1822 (Chap. 244.
Laws of 1822, from which act the different sections of the
title of the Revised Statutes referred to, with one exception
and with some variations, were originally taken), making it.
the duty of all the partners to see that the requirements of the
act are complied with, the failure of the county clerk to per--
form the duty of recording the certificate, which is cast upon
him by virtue of his office and by direction of the statute,
should not prejudice the party availing himself of its provi-
sions ; inasmuch as what had previously been made a duty of
the party was by the legislature dispensed with in the revision
of the statutes. It is insisted that this omission indicates an
intent to change the law. The provisions of the act of 1822·
are, in the sixth section, that "before any partnership under·
this act shall be carried into effect, the name or firm under·
which the same is to be conducted and the names of all the
general and special partners interested therein, distinguishing
them and their places of residence, shall be registered in a.

book to be kept for that purpose at all times open to public inspection, in the office of the clerk of the county in which the principal business of the partnership shall be carried on."

The seventh section required the registry to designate certain other facts relating to the proposed limited partnership. The eighth section made it "the duty of all the partners interested in any such partnership to see that the requirements of the sixth, seventh, eighth and twelfth sections of the act are complied with," and further provided that "in case the same shall be neglected or a false registry be made, all the parties interested in such partnership shall be liable for all the engagements thereof as general partners."

The twelfth section provided "that the registry required by this act shall not be made by the clerk of the county, or be considered valid, unless all the partners general and special  *  *  *  shall make and sign a certificate or declaration  *  *  *  containing the statements required by the sixth and seventh sections of this act, which shall be filed of record in the said clerk's office." It will be observed that while in the revision of the statutes the certificate itself must be recorded at large in a book kept for that purpose, in the act of 1822 the corresponding book was to register the composition, terms and conditions of the partnership, and the certificate was to be filed as the clerk's warrant for making the registry. None the less, however, the provision was explicit that the registry must be made before any partnership under the act could be carried into effect. The provision in the eighth section of the act of 1822, making it the duty of all the partners to see that the requirements of the law were complied with, did not impair the force of the previous language, which made the registration a condition, upon the strict performance of which the existence of the limited partnership was to depend. At most, the provision of the eighth section was declaratory, and added nothing to the effect of the failure to register the matters mentioned. It imposed no penalty as such. It simply declared the effect of the neglect of a compliance with the provisions of the act. It was wholly unnecessary to the objects of that

act, that any such declaration should be made, and its omission in the revision of the laws cannot be regarded as any evidence of the intention of the legislature to relax the statutory requirements.

The enactment was intended to relax the common law rule only upon well defined and prescribed conditions, and is for the benefit and protection of the special partner; but like many other statutes in derogation of the common law, its provisions are to be construed strictly and should not be extended beyond their express words or clear import. (*McClusky* v. *Cromwell*, 11 N. Y. 593–601.) In the construction of statutes, effect is to be given to the intention of the legislature and the object of the enactment, with the necessary qualification, that the intention must be such as the legislature have used fit words to express. (Potter's Dwarris on Statutes, 192.) And in Maxwell's work on the Interpretation of Statutes (page 4), it is well said " when once the intention is plain, it is not the province of the court to scan its wisdom or policy. Its duty is not to make the law reasonable, but to expound it as it stands, according to the real sense of the words." Or as Judge DENIO said of legislative acts in *People* v. *Board of Supervisors of New York* (16 N. Y. 432), " it is by the written language that their sense is to be ascertained."

I think the object of the statute we are considering is plainly expressed in apt words to convey the legislative intent. A certificate stating the composition, duration, terms and conditions of the proposed limited partnership shall be recorded at large in a book kept for that purpose, open to the inspection of all whose interest it may be to acquaint themselves with such facts. And when, after providing for the making and recording of such a certificate, the legislature say : " No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, or until an affidavit shall have been filed," their plain intent is unmistakable that the recording of the certificate, as well as the filing of the affidavit, should precede as facts a legal existence of the limited partnership and a legal exemption

of special partners from the common law liability attaching to general partners. That the legislature did attach a vital importance to the recording of the certificate and intend that proof of its having been done should be a prerequisite to any claim to immunity under the statute is also clear, from the distinction, created in the provision in question, between the filing and recording of papers. The certificate must be not only filed, but it must be recorded, while the affidavit, spoken of in the same sentence, is to be simply filed. Nor is this view open to criticism for harshness or injustice. To hold. otherwise would render nugatory a plain provision of the law made for the benefit of all and designed for publicity and security, compliance with which is possible to effect. I see no inconvenience in requiring of those who propose to unite in the formation of limited partnerships, that before contracting obligations in their new relation they should ascertain if the provisions of the statute, whose protection they seek, have been in all respects strictly complied with. They should see that the prescriptions of the statute, which confers the privileges and the immunities, have become accomplished facts. It is the province of the court in cases arising under the statutes to execute the law as it is written, where not in conflict with the Constitution, and it is to be governed by strict rules of law and should not be moved by considerations of the peculiar hardships of a case to usurp the function of the legislature. The current of judicial opinion in this state bears out our views of the necessity for a strict construction of the provisions of this statute. Reference to the decisions of other courts seems needless for us upon a question arising under one of our own statutes.

In *Madison County Bank* v. *Gould* (5 Hill, 309), Judge Bronson held that partners " are all alike answerable to third persons for the debts of the firm, unless a limited partnership was formed  *  *  *  in the manner prescribed by the statute." In *Van Ingen* v. *Whitman* (62 N. Y. 513), Judge Folger says of this statute, that it " does not set out to deal with motives, but with acts and their results, and it guards the

public, not by requiring good intentions, but a certain act done in a certain mode and a true statement that it has been done thus."

*In re Merrill* (12 Blatchf. Cir. Ct. Rep. 221), a case arising under our statute, Judge Woodruff says, "we are bound by the statute and the parties cannot claim under the statute, which derogates from the general rule of law, without showing a strict compliance with the statute."

In *Haviland* v. *Chace* (39 Barb. 283) Judge Peckham in a well considered opinion held that "in the statute under consideration the mode and manner in which a person may become a special partner are carefully pointed out, and it is. obviously the general purpose of the statute to make such person a general partner if he fail to comply with those provisions. In fact it would seem to follow as a matter of course that such person would be a general partner if he failed to comply with the provisions that make him a special partner, though no express declaration to that effect were contained in the statute. It *is only by force of the statute* that his liability is limited." And see *Argall* v. *Smith* (3 Denio, 435); and *Bell* v. *Merrifield* (28 Hun, 219, 222).

The appellant's position is not helped by reference to decisions under the manufacturing act of 1848. Section 10 of that act provides that "all stockholders of every company incorporated under this act shall be severally individually liable to the creditors of the company, in which they are stockholders, until the whole amount of capital fixed and limited by such company shall have been paid in and a certificate thereof shall have been made and recorded, as prescribed in the following section." The following section requires that "the president and a majority of the trustees, within thirty days" shall "record" in the county clerk's office a certificate stating the amount of the capital fixed and paid in.

The distinctions between the two acts are very obvious. Under the statute relating to the formation of limited partnerships the partnership is not "deemed to have been formed until the certificate shall have been made, acknowledged, filed and

recorded," while under the manufacturing act the corporation must have been, as a fact, formed and its stockholders are deemed to be at all times members of it and retain all the privileges and benefits pertaining to that relation, despite the failure to record the certificate. The manufacturing act simply imposes an additional liability upon, but does not affect the corporate relations of the stockholders. The provision as to recording is clearly only directory. I am quite unable to understand the force of any reasoning founded on analogy of the statute, whose provisions we are construing, with the manufacturing act of 1848. The opening language of the limited partnership act conveys the notice that such partnership may be formed " upon the terms, with the rights and powers, and subject to the conditions and liabilities herein prescribed." In this language, taken with that of the other sections of the statute which we have cited, this statute speaks with no uncertain sound and the most casual reading makes it obvious that its purpose is not to extend its immunities and privileges unless every one of its terms and its conditions shall have been strictly complied with. Certainly where one seeks its shelter, desiring exemption from a general liability resting upon all partners at common law, is it assuming too much that he should be required to scrupulously follow the plain requirements of that act, and to ascertain if compliance can at all times be shown by him to have been had with all of its terms and conditions ? But in the manufacturing act of 1848, there are no terms or conditions precedent upon which the status of the members of the corporation is made to depend. The corporation becomes such upon the filing of the certificate of incorporation, and the further clauses of the statute regulate the mode of management of the corporate affairs in its relations to its members and to the government. The obligation to execute and record the certificate of payment of the capital stock which is imposed upon the company's president and trustees, is a direction in the act to them ; non-compliance with which exposes them, in common with all other stockholders, to an additional liability as such, but in no sense

affects their incorporation or legal existence as a corporate body or the powers and privileges conferred upon such corporation by the laws of the state.

Lord MANSFIELD said "there is a known distinction between circumstances which are of the essence of a thing required to be done by an act of parliament and clauses merely directory." (*Rex* v. *Loxdale*,1 Burr. 447.)

The opinion of the court in *Veeder* v. *Mudgett* (95 N. Y. 295), arising as it does under the manufacturing act, is therefore inapplicable and it becomes unnecessary to consider the various views which led the majority of the members of the court to decide as they did.

We think no legal error was committed in refusing to submit the case to the jury, and that the judgment should be affirmed.

All concur for reversal except RUGER, Ch. J., and GRAY, J., dissenting.

Judgment reversed.