BEEZER, Circuit Judge:
This case poses the question when California “assesses” an income tax deficiency, for purposes of rendering the assessment nondischargeable in bankruptcy. See 11 U.S.C. §§ 507(a)(7)(A)(ii), 523(a)(1)(A). Jack and Paula King appeal the bankruptcy appellate panel’s decision that assessment occurs when a notice of proposed deficiency assessment becomes final. Franchise Tax Bd. v. King (In re King), 122 B.R. 383 (Bankr.9th Cir.1991). We have jurisdiction over the bankruptcy appellate panel’s final order, 28 U.S.C. § 158(d), and we affirm.
I
Taxes measured by income or gross receipts that are assessed within 240 days of the filing of a bankruptcy petition are non-dischargeable in bankruptcy. 11 U.S.C. §§ 507(a)(7)(A)(ii), 523(a)(1)(A). The Franchise Tax Board (the Board) mailed Notices of Proposed Additional Tax (NPATs) to the Kings more than 240 days before the Kings filed their Chapter 7 bankruptcy petition. The date on which those notices became final was within 240 days of the date on which the Kings filed for bankruptcy.
II
We review de novo issues of statutory interpretation. Trustees of the Amalgamated Ins. Fund v. Geltman Indus., 784 F.2d 926, 929 (9th Cir.1986).
“The date on which the taxes were assessed rather than the due date of the return determines the priority under the 240-day rule.” 3 Lawrence P. King, Collier on Bankruptcy ¶ 507.04[7][b], at 507-36 (15th ed. 1992). The same principle governs dischargeability. 11 U.S.C. § 523(a)(1)(A) (tying nondischargeability to priority under § 507(a)(7)).
The Board sent the NPATs to the Kings pursuant to its authority to mail “notice[s] of proposed deficiency assessment” because of corrections in the Kings’ federal tax returns. Cal.Rev. & Tax.Code § 18586.2. The Kings had “60 days after the mailing of each notice of additional tax proposed to be assessed” to protest “with the Franchise Tax Board ... the proposed additional tax.” Id. § 18590. The Kings did not protest. “If no protest is filed, the amount of the deficiency assessed becomes *1425 final upon the expiration of the 60-day period.” Id. § 18591.
The sole issue presented is whether the Kings were assessed when the Board mailed the NPATs or when the proposed additional taxes became final.
A
In the federal scheme the Secretary of the Treasury makes assessments. 26 U.S.C. § 6201(a). Prior to making an assessment, the Secretary must send the taxpayer a notice of deficiency. Id. § 6212(a). The Secretary may not assess a deficiency until a specified period of time after the notice is sent, or, if the taxpayer seeks a determination by the tax court, until a final determination by the tax court, which determination includes rights of appeal. Id. §§ 6213, 7481.
“The assessment shall be made by an assessment officer signing the summary record of assessment.... The date of the assessment is the date the summary record is signed by an assessment officer.” 26 C.F.R. § 301.6203-1; see 26 U.S.C. § 6203. See generally 2 William L. Norton, Jr., Norton Bankruptcy Law and Practice § 44.02 (1991) (summarizing the notice and assessment procedure set out by the Internal Revenue Code). “[Assessment of tax by the IRS creates a valid tax lien, [albeit] unrecorded [and] not enforceable against third parties until notice of the lien is given.” 2 Daniel R. Cowans, Cowans Bankruptcy Law and Practice § 13.6, at 674 (1989). Accordingly, in the federal scheme assessment involves the taking of an interest in the taxpayer’s property after affording the taxpayer notice of an alleged deficiency and an opportunity to challenge the deficiency. See In re Hartman, 110 B.R. 951 (D.Kan.1990).
B
In California’s scheme the Board usually must send a “notice [that] shall set forth the reasons for the proposed additional assessment and the computation thereof.” Cal.Rev. & Tax.Code § 18584; see id. § 18583 (referring to a “deficiency proposed to be assessed”); §§ 18586.1(a), 18587, 18589 (all referring to a “notice of a proposed deficiency assessment”); §§ 18586.2, 18586.3 (both referring to a “notice of proposed deficiency assessment”). In the cases of gains from either the sale of a residence or an involuntary conversion the Board may make an immediate assessment. Id. §§ 18586.4, 18586.5 (both providing that “such deficiency may be assessed at any time prior to the expiration of the [statute of limitations]”). Other code sections dealing with the initiation of assessment procedures also refer either to a “notice of deficiency” or to a “notice of a proposed deficiency assessment.” Id. §§ 18585, 18586.
Beginning with section 18590, the next eight code sections address the finality of an assessment. A taxpayer has 60 days to file “a written protest against the proposed additional tax” contained in the NPAT. Id. § 18590. “If no protest is filed, the amount of the deficiency assessed becomes final upon the expiration of the 60-day period.” Id. § 18591. “If a protest is filed, the Franchise Tax Board shall reconsider the assessment of the deficiency....” Id. § 18592. Further appeal to the State Board of Equalization is permitted, with finality dependent upon the extent to which a taxpayer pursues the appellate process afforded. Id. §§ 18593-18596. And then finally:
When a deficiency is determined and the assessment become final, the Franchise Tax Board shall mail notice and demand to the taxpayer for the payment thereof. The deficiency assessed is due and payable at the expiration of 10 days from the date of the notice and demand.
Id. § 18597.
The California Supreme Court has explained its system for assessment of deficiencies:
[T]he taxpayer, by filing a written protest with the [B]oard within 60 days after the mailing of the notice of deficiency (§ 18590), becomes entitled to a hearing before the [B]oard to contest the validity of the proposed assessment (§ 18592). If the [B]oard determines the matter ad *1426 versely to the taxpayer, he may appeal to the Board of Equalization (§ 18593), in which event he becomes entitled to a hearing before that body (§ 18595). If the Board of Equalization finds in favor of the [B]oard, the taxpayer may petition for a rehearing. If such a petition is denied, the deficiency assessment becomes final upon the expiration of 30 days from the time the Board of Equalization issues its opinion (§ 18596), and the amount assessed is then due and payable. Thus, simply by availing himself of the administrative remedies outlined above, a taxpayer against whom a deficiency tax assessment has been made is able to stay collection of the tax for a substantial period of time.
Dupuy v. Superior Court, 15 Cal.3d 410, 541 P.2d 540, 544, 124 Cal.Rptr. 900, 904 (1975).
At the initiation of the assessment process, both the statutes and the California Supreme Court refer to proposed deficiencies or assessments. When discussing finality, however, both use the term assessed or assessment, implying that the assessment occurred at some point before finality. The problem we encounter is that, unlike the federal scheme, California does not specifically designate a particular event as the act of assessment.
Ill
California’s failure to label a certain event as the act of assessment does not, however, control the disposition of our inquiry. We examine state-created rights so that they can be translated into the bankruptcy process. See Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). We do not blindly apply state-created labels; instead we look to the substantive legal attributes that state law affords. See Board of Trade v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924) (finding a property interest for bankruptcy purposes based on state-defined legal attributes even though state decisional law declared the interest not to be property); see also Commodity Futures Trading Comm’n v. Weintraub, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (looking to the substance of corporate governance structures to determine who controls a corporation’s attorney-client privilege in bankruptcy); State of California v. Farmers Markets (In re Farmers Markets), 792 F.2d 1400 (9th Cir.1986) (defining a property interest by reference to state law attributes); Roach v. Edge (In re Edge), 60 B.R. 690 (Bankr.M.D.Tenn.1986) (examining the attributes of a state medical malpractice action to determine the point at which a claim exists for bankruptcy purposes).
In its opinion, the bankruptcy appellate panel examines the substantive legal attributes that California’s assessment procedures afford. It translates those substantive legal attributes into the bankruptcy process.
The Bankruptcy Code itself contains no definition of the term “assessed.” Black’s Law Dictionary (5th Ed.1979) defines the word in several different ways: “[t]o ascertain; to fix the value of ... [t]o impose a pecuniary payment upon persons or property_ [t]o tax.” The word “assessed” is defined as the “equivalent to ‘imposed’.” Under the term “assessment,” the Dictionary gives numerous alternatives including: “[t]he process whereby the Internal Revenue Service imposes an additional tax liability.” Also, it has been held that an assessment is “a formal, discrete act with specific legal consequences.” In re Heritage Village Church and Missionary Fellowship, 87 B.R. 401, 403 (D.S.C.), aff'd, 851 F.2d 104 (4th Cir.1988).
The United States Supreme Court has commented that there are two types of assessments:
The assessment may be a valuation of property subject to taxation which valuation is to be multiplied by the statutory rate to ascertain the amount of tax. Or it may include the calculation and fix the amount payable, and assessments of federal estate and income taxes are of this type. Once the tax is assessed the taxpayer will owe the sovereign the amount when the *1427 date fixed by law for payment arrives.
Bull v. United States, 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) (emphasis added). Thus, it appears that “to assess” refers to a formal act of fixing of tax liability, and that this act comes after the calculation is completed but may be before the amount is due and payable.
The determination of the precise date of assessment should be accomplished by reference to the specific tax code and practices involved. See In re Hartman, 110 B.R. 951, 956 (D.Kan.1990) (“Recognizing the difficulty of defining ‘assessment’ so as to encompass all possible tax procedures of federal, state and local governmental units, Congress employed a common term of tax lexicon and left its particular meaning to depend upon the particular tax procedures.”) _
[[Image here]]
Appellant’s argument is straightforward: its N.P.A.T. does not fix the date of the assessment because at the time the notice is issued the additional tax is only “proposed,” and that the tax is assessed when it becomes final. In other words, its proposed additional tax only becomes an “assessment” on the date it becomes “final,” and in cases where no protest is filed this occurs 60 days after notice is issued.
The Board relies exclusively upon In re Hartman, 110 B.R. 951 (D.Kan.1990), where the district court found that an IRS tax deficiency was “assessed” months after the initial notice of tax deficiency. The court relied upon the fact that under the Internal Revehue Code, an assessment gives rise to an immediate tax lien and the right of the government to levy upon the taxpayer’s property. See 26 U.S.C. §§ 6322 & 6331(a). The court stated that an assessment is therefore “something more than fixing or determining ... an amount due,” and that it is akin to a levy on property. Id. at 955. The court supported this conclusion by examining the use of the word “assess” in another section of the Bankruptcy Code, § 362(a)(6), under which “any act to collect, assess, or recover a claim against the debtor ...” violates the automatic stay. Applying the familiar principle of statutory construction that words grouped together must be related in meaning, Schreiber v. Burlington Northern, Inc., 472 U.S. 1, 8, 105 S.Ct. 2458, 2462, 86 L.Ed.2d 1 (1985), it found that “assess” must be similar in meaning to “collect” and “recover,” and that the term necessarily implies an imposition of liability.
Because Hartman involves the federal income tax scheme, its analysis is not particularly helpful. Unlike the Internal Revenue Code, the California statute does not establish a procedure for making entries on the assessment rolls, nor does it state that an assessment triggers an immediate tax lien.
However, notwithstanding the Tax Code’s lack of clarity on this question, it is common sense that a tax assessment, as a formal act with significant consequences, cannot occur before it is final. In California, this final date is no less than 60 days after the issuance of the notice of proposed additional tax. Prior to this final date, the assessment is best described as a tentative calculation which the taxpayer has no obligation to pay. This view is bolstered by the fact that under Tax Code § 18597, the taxpayer is not required to make payment until after the assessment becomes final and after a second notice demanding payment is issued.
Thus, for the purposes of Bankruptcy Code § 507(a)(7)(A)(ii), the additional tax was “assessed” on February 22, 1988 when they [sic] became “final.”
King, 122 B.R. at 385-87 (footnotes omitted).
We agree with the bankruptcy appellate panel’s analysis of how California’s assessment procedures interact with the purposes of the Bankruptcy Code. Having explained the theoretical basis for the bankruptcy appellate panel’s approach, we adopt its reasoning.
*1428 IV
The bankruptcy appellate panel's judgment is AFFIRMED.