**In re Richard BRACEY, Debtor.**

**Richard BRACEY, Appellant,**

v.

**FRANCHISE TAX BOARD, STATE OF CALIFORNIA, Appellee.**

**BAP No. CC–93–1171–HVJ.**
**Bankruptcy No. SA 89–03909–JW.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 19, 1994.

Decided Aug. 8, 1994.

Bradford E. Henschel, Century City, CA, for appellant.

Anthony Sgherzi, Los Angeles, CA, for appellee.

Before HAGAN, VOLINN and JONES, Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge:

Richard Bracey ("Bracey"), a former chapter 7 debtor, appeals an order of the bankruptcy court holding that the appellee, the California Franchise Tax Board ("FTB") did not violate the discharge injunction provisions of section 524 by attempting to collect delinquent prepetition taxes. The issue centers on whether the taxes were discharged in Bracey's chapter 7 case. For the reasons expressed in this opinion, we reverse the decision of the bankruptcy court, and remand for further proceedings.

### I.

### FACTS

On February 23, 1988, FTB issued a "Notice of Additional Tax" ("assessment") to Bracey for the tax years of 1983 and 1984. Under California law (Cal.Rev. & Tax.Code § 18590) a taxpayer has a right to protest an assessment within 60 days. Bracey's 60–day appeal period expired on or about April 25, 1988.

Bracey's attorney mailed a protest of the assessment. The protest was dated April 21, 1988, within the 60–day period. The protest letter was received by FTB on May 5, 1988, more than 60 days after the assessment. The letter contained a protest of the assessment only as to 1984 taxes, was signed by the attorney and not Bracey, and no power of

attorney accompanied the protest. The FTB treated the protest as timely filed, although no action was taken to process the protest. The FTB considered the protest to have stayed the assessment from becoming final until May 17, 1991.

Bracey filed his chapter 7 petition on June 16, 1989, more than 240 days after April 25, 1988. He received a discharge on October 24, 1989.

After the discharge was entered, the FTB attempted to collect the assessment by sending Bracey demands for payment and threatening collection actions. On October 28, 1992, Bracey filed a "Notice of Motion for Contempt" in the Bankruptcy Court requesting a hearing. Bracey contended that the taxes had been discharged in his chapter 7 bankruptcy, and therefore the FTB's collection efforts violated 11 U.S.C. § 524. The FTB argued that the taxes had not been discharged because the letter of protest stayed the assessment from becoming final until May 17, 1991, and thus the FTB's efforts to collect were not prohibited by section 524.[1]

A hearing was held on November 19, 1992, and continued to January 7, 1993, at which time the bankruptcy judge ruled the FTB had not violated section 524. The bankruptcy judge held the letter of protest stayed the assessment from becoming final so that the taxes were not discharged, and noted the FTB treated the protest as valid. An order to that effect was thereafter entered from which Bracey timely appealed.

## II.

### STANDARD OF REVIEW

Whether Bracey's protest was a valid protest, tolling a statute of limitations, is a mixed question of law and fact. Questions of law and issues of statutory interpretation are reviewed *de novo*. *Cal. Dep't of Health Services v. Jensen (In re Jensen)*, 995 F.2d 925, 927 (9th Cir.1993); *King v. Franchise Tax Bd. (In re King)*, 961 F.2d 1423, 1424 (9th Cir.1992). Findings of fact are

reviewed under the clearly erroneous standard. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Jensen*, 995 F.2d at 927.

## III.

### DISCUSSION

A discharge in bankruptcy acts as an injunction "against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Bracey received a discharge pursuant to section 727 of the Bankruptcy Code. Under section 727, a debt is excepted from discharge if it is excepted from discharge under section 523. 11 U.S.C.A. § 727(b). Section 523(a)(1)(A) excepts from discharge taxes "of the kind and for the periods specified in section ... 507(a)(7) of this title." 11 U.S.C. § 523(a)(1)(A). Section 507(a)(7) states:

(a) The following expenses and claims have priority in the following order:

\* \* \* \* \* \*

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

\* \* \* \* \* \*

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition;....

11 U.S.C. § 507(a)(7)(A)(ii). Put simply, if a tax was assessed within 240 days of the filing of the bankruptcy petition, it is a priority claim in the bankruptcy. If the tax was assessed more than 240 days prior to the petition date, it is discharged.

Section 18590 of the California Revenue and Taxation Code provides:

1. References to "section" are to the respective section of Title 11 of the United States Code unless otherwise indicated.

Within 60 days after the mailing of each notice of additional tax proposed to be assessed the taxpayer may file with the Franchise Tax Board a written protest against the proposed additional tax, specifying in the protest the grounds upon which it is based.

Cal.Rev. & Tax.Code § 18590 (West 1983).[2]

The result of a failure to file a protest is set forth in section 18591:

If no protest is filed, the amount of the deficiency assessed becomes final upon the expiration of the 60-day period.

Cal.Rev. & Tax.Code § 18591 (West 1983).

▮▮▮ The Ninth Circuit Court of Appeals has previously addressed when a tax assessed under these provisions is dischargeable under sections 523 and 507 of the Bankruptcy Code. In *King v. Franchise Tax Bd. (In re King)*, 961 F.2d 1423 (9th Cir.1992) the Court of Appeals held that a tax is "assessed" for dischargeability purposes not when the assessment is issued by the FTB, but when the assessment becomes final under California law. 961 F.2d at 1427.

Bracey contends the protest filed by his attorney was ineffective. Under section 18591 of the California Revenue and Taxation Code, the assessment would then have become final 60 days after the February 23, 1988 assessment. Because the running of the 60-day period was more than 240 days before Bracey filed bankruptcy, Bracey argues that the taxes were discharged. The issue on appeal is whether the protest filed by Bracey's attorney prevented the tax assessments from becoming final.

The points advanced by Bracey in support of his contention that the protest was invalid are:

1. The protest was not received by FTB within 60 days, and thus the time of final assessment was not tolled.

2. The protest was not signed by Bracey and there was no power of attorney authorizing Bracey's attorney to make the protest.

The FTB argues that Bracey's protest was timely filed. The FTB contends that the requirement that a protest be "filed" within 60 days is met where the protest is postmarked before the 60-day period expires. In support, the FTB presented a copy of part of its Protest Control Desk Procedures, an internal memorandum used by the FTB in determining whether a protest is timely filed. The Protest Control Desk Procedures provide: (1) the timeliness of a protest is to be determined by either the date stamp of receipt, the postmark on the envelope, or the taxpayer's date on the letter; (2) the taxpayer is allowed an additional 5 days if the protest is mailed from within California, and 10 days if mailed from outside of California; and (3) "[i]f in doubt, err in the taxpayers [sic] favor."

Under certain circumstances, the FTB's interpretation of section 18590 of the California Revenue and Taxation Code would be entitled to deference. This is not the case here. The California Court of Appeals has stated:

Although courts ordinarily defer to the administrative interpretation of a statute adopted by the agency charged with its enforcement, such deference is not appropriate where, as here, the administrative interpretation occurs in an *internal memorandum*, rather than in an administrative regulation which is adopted after notice and hearing.

*City of Los Angeles v. Los Olivos Mobile Home Park*, 213 Cal.App.3d 1427, 1433, 262 Cal.Rptr. 446 (1989) (citations omitted, emphasis in original). *See also Jones v. Tracy School Dist.*, 27 Cal.3d 99, 107, 165 Cal.Rptr. 100, 611 P.2d 441 (1980) (no deference to agency memorandum where memorandum was purely internal, and was not adopted until after the agency became an amicus curiae in the case). *See also* Cal.Gov't Code § 11347.5(a) (West 1992).[3]

---

**2.** Both section 18590 and 18591 of the California Revenue & Taxation Code were repealed after the events described in this case. Stats.1993, ch. 31 (S.B. 3), § 18. The sections have been recodified with minor amendments as sections 19041

and 19042 of the California Revenue and Taxation Code, respectively.

**3.** Section 11347.5 of the California Government Code provides in part:

The Franchise Tax Board's interpretation of the statute is not binding. This does not, however, resolve when a protest is "file[d]" under Cal.Rev. & Tax.Code § 19041 (West 1994). No cases have interpreted the meaning of this term. Therefore, we look to cases interpreting the plain meaning of the term "file." These cases uniformly hold that a statute requiring the filing of a document is only complied with when the document is received, not when the document is mailed. *See, e.g., United States v. Lombardo,* 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916); *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900 (2d Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981).

In *Lombardo,* the defendant was indicted for violating a federal law requiring any person harboring an alien woman for the purpose of prostitution to file a statement to that effect with the Commissioner General of Immigration. The indictment was brought in the Western District of Washington, and the defendant demurred on the ground the offense was not committed in that district. The district court upheld the demurrer, and the prosecution appealed. In affirming the district court, the Supreme Court began by quoting the district court's opinion:

> The Government contends that the offense was a continuing one and extended from this district to Washington, D.C., and that the filing of the statement need not be at the office in Washington, but may be deposited in the post office of the United States, addressed to the Commissioner General, and this forwarding through the usual course of mail should be considered as 'filing,' and that the failure to post within thirty days would commence the offense which would be continuous. This contention cannot be reconciled with the language employed in the act. The word

'file' was not defined by Congress. No definition having been given, the etymology of the word must be considered and ordinary meaning applied. The word 'file' is derived from the Latin word *'filum,'* and relates to the ancient practice of placing papers on a thread or wire for safe-keeping and ready reference. Filing, it must be observed, is not complete until the document is delivered and received. 'Shall file' means to deliver to the office and not send through the United States mails. *Gates v. State,* 128 N.Y. Court of Appeals, 221 [28 N.E. 373 (1891)]. A paper is filed when it is delivered to the proper official and by him received and filed. Bouvier Law Dictionary; *White [sic] v. Stark,* 134 California, 178 [66 P. 223 (1901)]; *Westcott [Wescott] v. Eccles,* 3 Utah, 258 [2 P. 525 (1883)]; *In re Van Varcke [Von Borcke],* 94 Fed.Rep. 352 [(1899)]; *Mutual Life Ins. Co. v. Phiney,* 76 Fed.Rep. 618. Anything short of delivery would leave the filing a disputable fact, and that would not be consistent with the spirit of the act.' 241 U.S. at 76–77, 36 S.Ct. at 509. The Supreme Court noted "it would be difficult to add anything to the reasoning of Judge Neterer in the District Court." 241 U.S. at 77, 36 S.Ct. at 510. The Court then went on to say:

> A court is constrained by the meaning of the words of a statute. They mark the extent of its power, and our attention has not been called to any case which decides that the requirement of a statute, whether to secure or preserve a right or to avoid the guilt of a crime, that a paper shall be filed with a particular officer, is satisfied by a deposit in the post office at some distant place. To so hold would create revolutions in the procedure of the law and the regulation of rights. In instances it

---

(a) No state agency shall issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in subdivision (b) of Section 11342, unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule has been adopted as a regulation and filed with the Secretary of State pursuant to this chapter.

Cal.Gov't Code § 11347.5(a) (West 1992). The Protest Control Desk Procedures, in setting out when a protest is filed, "implement[s], interpret[s], or make[s] specific the law enforced or administered by" the FTB, and is therefore a "regulation" within the definition of section 11342 of the California Government Code. *See* Cal.Gov't Code § 11342(b) (West Supp.1994). The Protest Control Desk Procedures have not been adopted as regulations under California law.

might, indeed, be convenient; in others, and most others, it would result in confusion and controversies; and we would have the clash of oral testimonies for the certain evidence of the paper in the files. We hesitate, in order to accommodate the venue of a particular offense, to introduce such confusion.

241 U.S. at 78, 36 S.Ct. at 510.

In *Pathway Bellows,* Pathway Bellows contracted with a carrier to ship some goods. The goods arrived damaged. One provision of the bill of lading issued by the carrier required Pathway Bellows to submit any damage claims in writing, filed within nine months of the date of delivery of the damaged goods. This provision was included pursuant to the federal law, and is included in a Uniform Bill of Lading approved and prescribed by the Interstate Commerce Commission. 630 F.2d at 901 n. 1. Pathway Bellows mailed an adequate notice of its damage claim on the last day of the nine month period, but it was not received by the carrier until after the nine month deadline had passed. The district court interpreted the provision to mean that the claim had to be mailed within nine months of the date of delivery. In rejecting this contention, the Second Circuit said:

> As an initial matter, we agree with the defendant-Trustees that the district court's construction of the word "filed" finds neither support nor precedent in case law. Indeed, relevant authority is uniformly to the effect that a paper will not be considered "filed" until it has been delivered to and received by the party with whom it is to be filed. *See United States v. Lombardo,* 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916); *Laser Grain Co. v. United States,* 250 F. 826 (8th Cir.1918); *In re Imperial Sheet Metal, Inc.,* 352 F.Supp. 1149 (M.D.La.1973); *President & Dirs. of Manhattan Co. v. Laimbeer,* 108 N.Y. 578, 15 N.E. 712, 71 N.Y.S.App. 656 (1888); *Schaffer v. Pennsylvania R.R.,* 127 N.Y.S.2d 466 (Mun.Ct.1950), *aff'd,* 127 N.Y.S.2d 468 (Sup.Ct.App.Term 1952).

630 F.2d at 902. *See also Hoyt v. Stark,* 134 Cal. 178, 66 P. 223, 224 (1901) ("Regardless of the varying phraseology of the statutes, in contemplation of law a paper whose filing carries notice, or affects private rights, is filed only when deposited with the proper officer at his office for this especial purpose.").

This is consistent with the rule regarding appeals of bankruptcy court decisions. "[F]iling shall not be timely unless the papers are received by the clerk within the time fixed for filing". F.R.B.P. 8008(a). Mailing the notice of appeal prior to the deadline is insufficient. *See Deyhimy v. Rupp (In re Herwit),* 970 F.2d 709, 710 n. 2 (10th Cir.1992); *Walker v. Bank of Cadiz (In re LBL Sports Center, Inc.),* 684 F.2d 410, 413 (6th Cir.1982); *Ramsey v. Ramsey (In re Ramsey),* 612 F.2d 1220, 1223 (9th Cir.1980).

Section 18591 of the California Revenue and Taxation Code is plain in its direction that an assessment becomes final on expiration of the 60–day period, unless a protest has been filed. In the present case, the protest was not filed within 60 days of the assessment, because it was not received by the FTB until after the 60–day period had expired. Whether or not the FTB treated the protest as timely is irrelevant to the question of whether the protest was, in fact, timely filed. Moreover, no further action was taken by either the FTB or Bracey to determine the deficiency on its merits after Bracey's attorney mailed the notice of protest in 1988. Under California law, the assessment became final over a week before the FTB received the protest on May 5, 1988. The taxes were "assessed" more than 240 days prior to the bankruptcy petition, and were thus discharged under 11 U.S.C.A. § 523(a)(1)(A).

## IV.

### CONCLUSION

For the foregoing reasons, we reverse and remand to the bankruptcy court for further proceedings consistent with this opinion.