13 Cal.Rptr.3d 7 (2004)
118 Cal.App.4th 83
Peter Joseph CAVANAGH, Plaintiff and Appellant,
v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD et al., Defendants and Respondents.
No. C042172.
Court of Appeal, Third District.
March 30, 2004.
*8 Peter J. Cavanagh, in pro. per., for Plaintiff and Appellant.
Bill Lockyer, Attorney General, Lawrence K. Keethe, Supervising Deputy Attorney General, and Robert E. Asperger, Deputy Attorney General, for Defendants and Respondents.
Certified for Partial Publication.[*]
RAYE, J.
Economic difficulties led plaintiff Peter Joseph Cavanagh, owner of a landscaping business, to file for bankruptcy several times. The Employment Development Department (Department) issued tax assessments for unpaid unemployment insurance contributions and other tax liabilities of the insolvent business. In response, Cavanagh a filed petition for reassessment. An administrative law judge (ALJ) denied the petition on its merits. On appeal, the Unemployment Insurance Appeals Board (Appeals Board) ruled that the petition could not proceed during the automatic bankruptcy stay without the bankruptcy court's permission. The Appeals Board vacated the ALJ's decision and held the petition must be held in abeyance so long as the automatic stay was in effect. Following the conclusion of the bankruptcy case, the petition was again set for hearing. After Cavanagh failed to appear, the petition was dismissed and the assessments became final.
A second bankruptcy followed, and the Department issued additional assessments. Cavanagh filed another petition for reassessment. Hearings on the petition have been postponed in light of a pending criminal case against Cavanagh.
Cavanagh filed a petition for writ of mandate to prevent the Department from taking any further action against him. The trial court denied the mandate petition. Proceeding in propria persona, Cavanagh appeals, contending: the court's denial of his petition for writ of mandate conflicts with the express language of the Appeals Board decision; the statute that the court found bars Cavanagh from seeking writ relief does not apply; and, as a matter of law, the court has a duty to prohibit the Department's use of false representation in any other court proceeding. We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
This case involves the seldom-encountered intersection of bankruptcy and assessments for unpaid unemployment insurance contributions. Cavanagh filed several personal bankruptcy petitions involving his landscaping business. Following the bankruptcy filings, the Department issued assessments of the amounts owed by the insolvent business for unemployment insurance contributions. Before addressing Cavanagh's various challenges to the trial court's decision denying his petition for writ of mandate, we recount the procedural background in some detail.[1]

*9 The 1992 Assessments
Cavanagh filed for personal bankruptcy in 1990 under chapter 11 of the United States Bankruptcy Code (Bankruptcy Code; 11 U.S.C.). The Department filed a creditor's claim in the proceeding for a tax period in 1981.
During the pendency of the bankruptcy proceeding, the Department issued its first assessment to Cavanagh. The assessment covered tax periods from 1986 through 1991 and totaled $88,648.43. It sought to recover amounts payable under Unemployment Insurance Code section 1735 for unemployment insurance contributions and other tax liabilities of Cavanagh's landscape business. The Department issued an identical assessment against Mrs. Cavanagh.
Cavanagh filed an administrative petition for reassessment, arguing the assessment violated the automatic stay under the Bankruptcy Code. In October 1994 an ALJ denied the petition on its merits.
Cavanagh's bankruptcy case was converted to a liquidation under chapter 7 of the Bankruptcy Code. In December 1994 Cavanagh was granted a discharge as to "all dischargeable debts."[2]
In April 1995 the Appeals Board remanded the petition for reassessment to obtain further evidence as to whether Cavanagh was in bankruptcy. The Appeals Board also sought further evidence as to whether the automatic bankruptcy stay affected the Department's actions.
The Appeals Board order stated: "[W]e cannot tell from the state of the record ... whether there are bankruptcy proceedings applicable to this corporation and the petitioners in their individual capacities. The petitioners have presented no documentary proof of such proceedings.... [¶] ... [¶] As we cannot tell from the record whether such [an automatic] stay is applicable to these proceedings, we will remand these cases to an administrative law judge for further hearing for the limited purpose of resolving this issue. It will be the purpose of the hearing to provide the petitioners an opportunity to present additional evidence of bankruptcy proceedings.... It will also be the purpose of such a hearing to provide [the Department] an opportunity to present any evidence and authority that it may have that its actions to assess and collect the assessment are not stayed with respect to either the corporation or to the petitioners, including the authority that establishes that these administrative proceedings are not subject to such a stay." The order also provided the petition for reassessment would be returned to the Appeals Board for decision after receipt of any additional evidence.
Cavanagh filed a new bankruptcy petition in May 1995, requesting reorganization under chapter 13 of the Bankruptcy Code. The court dismissed this second bankruptcy case in July 1995.
In January 1996 the Appeals Board considered the additional evidence following remand and rendered a decision. The Appeals Board equated the Department's assessment to an Internal Revenue Service "notice of deficiency." The Bankruptcy Code exempts notices of deficiency from the automatic stay under section 362(b)(9) of title 11 of the United States Code. However, the Appeals Board concluded the ALJ lacked jurisdiction to decide Cavanagh's petition for reassessment during the pendency of the bankruptcy.
*10 The Appeals Board held: "Our conclusion is that the automatic stay applies to these proceedings and that they must be held in abeyance so long as the stay is in effect. [¶] DECISION[:] [¶] In each case the appealed portion of the consolidated decision of the administrative law judge is set aside without prejudice to the [Department's] right to establish each petitioner's liability under section 1735 of the [Unemployment Insurance Code] when the automatic stay is no longer in effect. The issue of each petitioner's liability for any assessment under the notice issued herein shall not be decided through administrative proceedings under the jurisdiction of this Board so long as the automatic stay remains in effect."[3]
In March 1996 the Department served notice that the petition for reassessment would be heard on April 30, 1996. Cavanagh failed to appear. The ALJ dismissed the petition in May 1996. Cavanagh filed a request to reopen the administrative proceedings, claiming to have not received notice of the April 30 hearing.
The court scheduled a hearing on the request to reopen for July 23, 1996. Subsequently, Cavanagh filed a second chapter 13 bankruptcy petition. The ALJ issued an order staying the hearing until the conclusion of the second chapter 13 bankruptcy. Following the order, Cavanagh dismissed the second chapter 13 case. The hearing on Cavanagh's request to reopen was rescheduled for hearing in November 1996.
In September 1996 the Ventura County District Attorney filed a felony complaint against Cavanagh for failing to pay employment taxes for the employees of his landscaping business between November 1992 and May 1995. Cavanagh sought to continue further administrative proceedings during the pendency of the felony case.
The ALJ denied Cavanagh's motion for a continuance, and Cavanagh declined to participate further in the hearing on his request to reopen the administrative proceedings. In December 1996 the ALJ denied Cavanagh's request to reopen the proceedings.
Cavanagh filed a third chapter 13 bankruptcy petition in the summer of 1997. In September 1997 the Appeals Board affirmed the ALJ's order denying Cavanagh's request to reopen the petition for reassessment.

The 1996 Assessments
During Cavanagh's second chapter 13 bankruptcy case, in July 1996, the Department issued a second notice of assessment to Cavanagh under Unemployment Insurance Code section 1735. The assessments totaled $79,591.74 and purportedly covered the tax period from October 1987 through December 1995. According to a subsequent declaration by the Department, however, the assessments were actually limited to tax periods from January 1993 through December 1995, as well as penalties for the final quarter of 1987.
Cavanagh again filed a petition for reassessment. However, since the felony complaint filed shortly thereafter targeted many of the same tax periods, no hearings have been held on the petition.

The Petition for Writ of Mandate
In March 2002 Cavanagh brought a petition for writ of mandate in the trial court. *11 Cavanagh's writ petition alleged: (1) the Department violated the automatic bankruptcy stay by serving assessments on Cavanagh under Unemployment Insurance Code section 1735, (2) the Department violated the terms of the Appeals Board's January 1996 decision by serving the 1996 assessments and seeking criminal prosecution, (3) the Department's actions conflicted with the opinion of the Attorney General regarding the effect of the automatic stay, (4) the Department violated a discharge order by the bankruptcy court, and (5) the Department made false representations when opposing Cavanagh's request to delay the proceedings until the conclusion of the criminal prosecution.
The petition for writ of mandate requested the Department be enjoined from contending that Cavanagh is liable under the assessments. The petition also asks for declaratory relief as to the validity of the assessments.
The trial court denied Cavanagh's writ petition: "Initially, the court notes that because of Constitutional and statutory limitations, as [pled] by the respondents, it does not have jurisdiction to award the relief sought by the petitioners. In the alternative and separately, and after careful rereading, the Court finds that the petitioners' claim in large part is based on a limited and improper reading of the January 1996 [Appeals Board] decision. Specifically, the [Appeals Board's] January 1996 decision did not set aside the 1992 assessment or set conditions on future assessments, the [Department's] further administrative proceedings regarding the 1992 assessment were consistent with the [Appeals Board's] 1996 decision, and proceedings regarding the [Department's] 1996 assessment have been consistent with the automatic stay and with the [Appeals Board's] January 1996 decision."
Following entry of judgment, the Cavanaghs filed timely notices of appeal. Mrs. Cavanagh was dismissed from the present appeal by order of October 9, 2002.

DISCUSSION

I
Cavanagh's challenges to the trial court's denial of his writ petition center on the scope and effect of an automatic stay in bankruptcy. Accordingly, we briefly review the law surrounding automatic stays.
The scope of an automatic stay is broad. The purpose of an automatic stay "`is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions. [Citations.] The automatic stay also prevents piecemeal diminution of the debtor's estate.'" (Tully v. World Savings & Loan Assn. (1997) 56 Cal.App.4th 654, 662, 65 Cal.Rptr.2d 545, quoting Matter of Roach (9th Cir.1981) 660 F.2d 1316, 1318-1319.) An automatic stay usually precludes "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case...." (11 U.S.C. § 362(a)(6).)
The Bankruptcy Code also provides an exception to this general prohibition against assessments. Section 362(b)(9) of title 11 of the United States Code carves out an exception for tax assessments. For all bankruptcy cases filed before October 22, 1994, section 362(b)(9) exempts any "notice of tax deficiency" from the automatic stay.[4] For all bankruptcy cases filed *12 after October 22, 1994, section 362(b)(9) also exempts "an assessment for any tax."[5] Under these provisions, although a governmental unit may not collect taxes or create a lien during a bankruptcy stay, it may notify a debtor of a tax deficiency. (H & H Beverage Distrib. v. Dept. of Revenue of Pa. (3d Cir.1988) 850 F.2d 165, 166-167 (H & H).)

II[**]

III
Cavanagh contends the Department's assessments violated the automatic stay and should be set aside. The Department, at great length, argues that its assessments functioned like federal notices of tax deficiency and therefore were exempt from the automatic stay. Cavanagh disputes this interpretation.
A federal "notice of deficiency" informs the taxpayer of an alleged deficiency and triggers the time within which the taxpayer must either pay the alleged deficiency or initiate protest proceedings: "If the Secretary determines that there is a deficiency in respect of any tax ... he is authorized to send notice of such deficiency to the taxpayer...." (26 U.S.C. § 6212(a).) Within 90 days after the mailing of the notice of deficiency, the taxpayer may file a petition with the tax court for a redetermination of the deficiency. (26 U.S.C. § 6213(a).)
In contrast, after the determination of a deficiency becomes final and the tax is due, an assessment is issued.[6] The issuance of an assessment automatically gives rise to a federal tax lien. (26 U.S.C. §§ 6321, 6322.)
To bolster its argument that its assessments for unpaid unemployment insurance contributions operate as "notices of tax deficiency," the Department cites H & H, supra, 850 F.2d 165. In H & H, the Third Circuit Court of Appeals determined whether Pennsylvania violated the automatic stay in a chapter 11 bankruptcy proceeding by conducting a sales tax audit and issuing a notice of audit assessment to the debtor, H & H Beverage Distributors. (H & H, supra, 850 F.2d at p. 165.)
After H & H Beverage Distributors filed for bankruptcy under chapter 11, the state undertook a sales tax audit and sent H & H a "notice of audit assessment," which read: "Final Assessment. [¶] A certificate of lien will be filed with the prothonotary of your county, unless this assessment is paid or a notice of intent to appeal is filed with the board of appeals within thirty (30) days of the assessment mailing date...." (H & H, supra, 850 F.2d at p. 166.) H & H Beverage Distributors filed a complaint in bankruptcy court seeking to set aside *13 the sales tax assessment. The bankruptcy court ruled the audit and assessment violated the automatic stay under section 362(a) of title 11 of the United States Code and declared the assessment null and void. The Pennsylvania district court affirmed, finding the state willfully violated the automatic stay. (H & H, supra, 850 F.2d at p. 166.)
The Third Circuit reversed. The court began by noting the automatic stay provision under the Bankruptcy Code provides one of the fundamental debtor protections. The stay serves two essential purposes: to protect creditors, promoting the goal of equal treatment, and to give the debtor a "breathing spell." (H & H, supra, 850 F.2d at p. 166.) The exemption of the notice of tax deficiency from the automatic stay permits the debtor to take his or her personal tax case to the tax court if authorized by the bankruptcy court. (Id. at pp. 166-167.)
As the court in H & H explained: "Thus, once a deficiency notice has been issued, a debtor's tax liability can be resolved in one of two ways: [¶] `In essence ... the bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to claims against the estate and claims against the debtor concerning his personal liability for nondischargeable taxes. Thus, if the Internal Revenue Service, or a State or local tax authority files a petition to determine dischargeability, the bankruptcy judge can either rule on the merits of the claim and continue the stay on any pending Tax Court proceeding or lift the stay on the Tax Court and hold the dischargeability complaint in abeyance.' [¶] [Citation.]" (H & H, supra, 850 F.2d at p. 168.)
Since the exemption originated in the federal tax system, the court compared the federal taxing procedure with analogous provisions under Pennsylvania law. The court compared the federal "notice of tax deficiency" with Pennsylvania's procedure for collecting delinquent taxes. (H & H, supra, 850 F.2d at pp. 168-169.) The court concluded: "Although Pennsylvania labels its provision a `notice of audit assessment,' the effect and purpose of the notice is identical to an IRS `notice of tax deficiency.' [Fn. omitted.] In both cases, the notice is statutorily required and commences the process by which the taxpayer either pays the government's estimate of the tax due or appeals for redetermination.... More importantly, issuance of the notice was not tantamount to the creation of a lien. First, H & H was in the midst of its administrative appeal in the state court system, and the Commonwealth cannot obtain a lien until the appeal is resolved. Second, no lien is created under Pennsylvania law until the Commonwealth demands the amount, interest, penalty and cost, and the taxpayer neglects or refuses to pay." (Id. at p. 169.)[7]
The court ultimately concluded the Pennsylvania assessment was fundamentally different from an assessment under federal law: "Therefore, the Commonwealth's notice of audit assessment is the functional equivalent of the notice of tax deficiency, and pursuant to § 362(b)(9) [of title 11 of the United States Code], it is expressly permitted during the pendency of an automatic stay. No lien could be created until the Commonwealth *14 filed the amount of liability with the prothonotary. Accordingly, we hold that the Commonwealth does not violate the automatic stay by auditing a debtor, i.e., calculating its claim, and then issuing a notice of audit assessment. Because the state and federal notices have the same effect, there is no reason to permit the federal notice pursuant to § 362(b)(9), yet bar the equivalent state notice." (H & H, supra, 850 F.2d at pp. 169-170.)[8]
As the Department points out, only when a state tax assessment becomes final and collectable is it considered an "assessment" as that term is used in the Bankruptcy Code. The Ninth Circuit Court of Appeals in In re King (9th Cir.1992) 961 F.2d 1423 (King) considered whether a California state income tax assessment was dischargeable in bankruptcy. At issue was the timing of the assessment and whether the assessment occurred at least 240 days prior to the filing of the bankruptcy petition. The court considered an assessment under California law and the purposes of the Bankruptcy Code, concluding an assessment under California law occurs only when it becomes final.
The King court found: "[N]otwithstanding the Tax Code's lack of clarity on this question, it is common sense that a tax assessment, as a formal act with significant consequences, cannot occur before it is final. In California, this final date is no less than 60 days after the issuance of the notice of proposed additional tax. Prior to this final date, the assessment is best described as a tentative calculation which the taxpayer has no obligation to pay." (King, supra, 961 F.2d at p. 1427, italics added.)
In the present case, authority for the Department's assessments rests in Unemployment Insurance Code section 1735, which provides that a corporate officer may be assessed for unemployment contributions owed by the corporation: "Any officer, major stockholder, or other person, having charge of the affairs of a corporate ... employing unit, who willfully fails to pay contributions required by this division or withholdings ... on the date on which they become delinquent, shall be personally liable for the amount of the contributions, withholdings, penalties, and interest due and unpaid by such employing unit. The director may assess such officer, stockholder, or other person for the amount of such contributions, withholdings, penalties, and interest...."
After receiving an assessment, the taxpayer has 30 days in which to file a petition for reassessment. (Unemp.Ins.Code, § 1222.) If the taxpayer does not file a petition for reassessment within the 30-day period, the assessment becomes final. (Ibid.)
If, however, the taxpayer does file a petition for reassessment, the assessment cannot become final until after the taxpayer obtains full administrative review. (Unemp.Ins.Code, §§ 1223-1224.) No lien arises until completion of the review process and the assessment is final: "(a) If any employing unit or other person fails to pay any amount imposed under this division at the time that it became due and payable, the amount thereof, including penalties and interest, together with any costs, shall be a perfected and enforceable state tax lien .... [¶] (b) For purposes of this section, amounts are `due and payable' on the following dates: [¶] ... [¶] (4) For all other amounts, the date the assessment is final...." (Unemp.Ins.Code, § 1703.)
*15 Unlike federal tax assessments, which become final when issued and immediately give rise to a statutory lien, the Department's assessments trigger the time for a taxpayer to either pay the disputed tax or begin protest proceedings. Here, Cavanagh filed petitions for reassessment to challenge the assessments and prevent any of the assessments from becoming final or giving rise to liens.
Cavanagh challenges this interpretation, relying on a 1989 Attorney General memorandum. However, the memorandum, written prior to King, does not consider a situation in which the taxpayer's petitions for reassessment prevent a lien from being imposed. We find, under the reasoning of H & H and King, the Department's assessments were exempt from the automatic stay provisions of the Bankruptcy Code.
As the Department notes, its 1992 assessment did not give rise to a lien until 1997, when the dismissal of Cavanagh's petition for reassessment became final. The United States Bankruptcy Code has since been amended to include language allowing "an assessment for any tax" during the automatic stay. (See discussion at pp. 11-12, ante, and 11 U.S.C. § 362(b)(9)(D).) The amended language applies to all bankruptcy cases filed after October 22, 1994.

IV-VII[***]

DISPOSITION
The judgment is affirmed. The Department shall recover costs on appeal. (Cal. Rules of Court, rule 27(a).)
We concur: SCOTLAND, P.J., and HULL, J.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, IV, V, VI, and VII.
[1] We grant Cavanagh's application, filed September 16, 2003, to amend citations to the record in appellant's opening brief.
[2] We grant Cavanagh's second request for judicial notice, filed September 16, 2003. The request includes the bankruptcy files.
[3] We grant Cavanagh's third request for judicial notice, filed January 8, 2004. We take notice of an Appeals Board memorandum dated February 16, 1996. (Evid.Code, §§ 452, 453.)
[4] Former section 362(b)(9) of title 11 of the United States Code reads, in part: "(b) The filing of a petition ... does not operate as a stay ... [¶] ... [¶] (9) under subsection (a) of this section, of the issuance to the debtor by a governmental unit of a notice of tax deficiency[.]"
[5] Section 362(b)(9) of title 11 of the United States Code states, in part: "(b) The filing of a petition ... does not operate as a stay ... [¶] ... [¶] (9) under subsection (a), of  [¶] (A) an audit by a governmental unit to determine tax liability; [¶] (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency; [¶] ... or [¶] (D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect ...)."
[**] See footnote *, ante.
[6] "Except as otherwise provided ... no assessment of a deficiency in respect of any tax ... and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day ... period ... nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final...." (26 U.S.C. § 6213(a).)
[7] The court also noted part of the problem stemmed from Pennsylvania's use of the word "assessment" in its notice form. Under federal law, an assessment officially records the fact and amount of liability with consequences similar to reduction of a claim to judgment. However, under Pennsylvania law, assessment designates the state's calculation of tax deficiency and is not an official act that results in tax liability. (H & H, supra, 850 F.2d at p. 169, fn. 5.)
[8] The court cautioned that once the notice is issued, the state is barred from taking steps to create a lien. The state's notice provides the bankruptcy court with a starting point for determining final tax liability. (H & H, supra, 850 F.2d at p. 170.)
[***] See footnote *, ante.