Filed 11/16/21  Brown v. Zive CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CHERIE BROWN, | B300415 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC475181) |
| v. | |
| YOUVAL ZIVE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm Mackey, Judge.  Reversed and remanded with instructions.

The Zabetian Firm, Arash H. Zabetian; JDR Law Inc. and John D. Rowell for Plaintiff and Appellant.

Locke Lord, Daniel A. Solitro and Simon M. Feng for Defendant and Respondent Deutsche Bank National Trust Company.

Haeri & Zelli and Nedda Haeri for Defendant and Respondent Adi Perez.

Cherie Brown sued Youval Zive, Vaca Partnership, Pacific Holdings, Phoenix Realty Investments, LLC (collectively Zive parties) and others for fraud, quiet title and related claims on December 13, 2011.  On May 8, 2019 the trial court granted a motion to dismiss pursuant to Code of Civil Procedure sections 583.310 and 583.360,[1] finding Brown had failed to bring her lawsuit to trial within five years.  On appeal Brown argues the court erred in finding this action was not subject to automatic stays arising out of the bankruptcy petitions of various defendants and failing to toll the mandatory five-year period as a result.  We reverse and remand for further proceedings on the quiet title and fraudulent conveyance causes of action and direct the trial court to reconsider the motion to dismiss as to the fraud cause of action.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Real Estate Transaction and Foreclosure Proceedings*

In January 2007 Brown purchased a home on Lankershim Boulevard in Los Angeles from Vaca Partnership.  According to Brown, Zive, the general partner of Vaca, had assured Brown he would arrange financing and handle the transaction for her.  Prior to taking title to the property Brown executed an all-inclusive purchase money promissory note in favor of Zive for approximately $1 million with an interest rate of "7.2 (Variable) percent," which Brown alleged she signed at Zive's direction.  The promissory note, executed in November 2006, provided for monthly payments of $3,030 "or more," a $30,000 principal

---

[1]     Statutory references are to this code unless otherwise stated.

payment on December 20, 2006 and a maturity date of March 1, 2008. The promissory note stated the principal amount included the balance due on two underlying promissory notes executed by Zive in favor of Washington Mutual Bank and secured by deeds of trust encumbering the Lankershim property. The original amounts of the underlying notes were $980,000 and $46,142. The promissory note was secured by a deed of trust encumbering the Lankershim property listing Zive as the beneficiary. In March 2008 Zive and Brown executed an addendum to the promissory note extending the maturity date to March 1, 2010 conditioned upon Brown's timely payments of $30,000 to Zive on a specified schedule.

Brown alleges that, prior to 2009, she made payments on the promissory note by delivering to Zive and his associate Liat Menahem checks payable to the financial institution lenders on the underlying notes. Zive assured Brown he was delivering her payments to those financial institutions. Beginning in 2009, Brown alleges, Zive did not deliver her payments to the lenders but instead deposited them in his own bank account.

In early 2011 Zive, through his authorized agent, initiated nonjudicial foreclosure proceedings against Brown. A notice of default and election to sell was issued and recorded on January 25, 2011. The notice directed Brown to contact Pacific Holdings, of which Zive and Menahem are alleged to be owners and/or employees, to arrange for payment of the amount due. Notices of trustee's sale were recorded on July 1, 2011, July 5, 2011 and July 14, 2011. On September 7, 2011 Zive executed an assignment of deed of trust assigning all rights in the deed of trust to Phoenix Realty Investments LLC.

On September 14, 2011 a trustee's deed upon sale was recorded. The deed stated the Lankershim property had been sold at public auction to Phoenix Realty, the successful bidder at the trustee's sale. In late September 2011 Phoenix Realty filed unlawful detainer proceedings to evict Brown from the home. The verification of the unlawful detainer complaint was signed by Menahem on behalf of Phoenix Realty.

2. *The Complaint and Demurrer*

On December 13, 2011 Brown sued the Zive parties, Menahem and 50 Doe defendants for fraud, wrongful foreclosure and quiet title.[2] The Zive parties and Menahem demurred.

On September 26, 2012 the court sustained the demurrer to the fraud cause of action without leave to amend against Zive, Vaca Partnership and Pacific Holdings.[3] Leave to amend the

---

[2] The original complaint also named Yoseph Ovadia as a defendant. He was not included in the operative second amended complaint.

[3] The trial court's ruling was based, in part, on the fact that 18 months prior to filing her complaint in this action Brown had sued Zive, Vaca Partnership and Pacific Holdings for fraud, negligent misrepresentation, failure to disclose seller financing, legal malpractice and breach of fiduciary duty. The court found the allegations in the complaint in this action were almost identical to the allegations in the prior lawsuit and were therefore barred by section 430.10, subdivision (c).

Brown's earlier action proceeded to trial in 2013 on the failure to disclose seller financing cause of action. The jury found in favor of Brown and awarded her $392,500 in damages. Our colleagues in Division Five affirmed the judgment but reduced the damage award to $325,283. The court also reversed the trial court's order granting nonsuit on the fraud claim and remanded

fraud cause of action was granted as to Menahem and Phoenix Realty. The demurrer to the wrongful foreclosure cause of action was sustained against all defendants without leave to amend. The demurrer to the quiet title cause of action was overruled.

### 3. *The First Amended Complaint and Demurrer*

Brown filed her first amended complaint on October 18, 2012 alleging causes of action for fraud against Menahem, Phoenix Realty and the Doe defendants and quiet title against all defendants. On April 18, 2013 the trial court sustained the Zive parties' demurrer without leave to amend and entered an order of dismissal.

### 4. *The Motion To Vacate the Dismissal and Second Amended Complaint*

On August 21, 2013 Brown, representing herself, moved to vacate the dismissal on the basis of excusable neglect (§ 473, subd. (b)). The trial court granted the motion on September 11, 2013 over the defendants' opposition and granted leave to Brown to file a second amended complaint.

Brown filed the second amended complaint on October 30, 2013. In addition to the Zive parties and Menahem, Brown named two additional defendants, Lanker Partnership and H5 Dev. Partnership. The pleading alleged Zive was the majority owner and managing general partner of Lanker Partnership.

---

for retrial on that cause of action. (*Brown v. Zive* (Apr. 16, 2015, B250561) [nonpub. opn.] (*Brown I*).) On remand the fraud cause of action was tried to a jury, which found in favor of Brown and awarded $25,000 in damages. Judgment was entered on December 3, 2018.

The fraud and quiet title causes of action in the second amended complaint remained substantially the same as in previous iterations of the pleading.  Brown alleged generally that Menahem, Phoenix Realty and the Doe defendants had committed fraud by conspiring with Zive to misrepresent material facts concerning the financing and purchase of Brown's home; they had assisted one another in foreclosing on the home with knowledge of the fraudulent transactions; and Phoenix Realty had acquired title to the home with knowledge of the fraud perpetrated against Brown.

The quiet title cause of action, brought against all defendants except Menahem, alleged Brown was the equitable owner of the property, the trustee's deed upon sale purporting to transfer the property to Phoenix Realty was void and the defendants had no legal or equitable rights to the property.

The fraudulent transfer cause of action, alleged against Zive, Vaca Partnership, Menahem, Phoenix Realty, Lanker Partnership and H5 Dev., contained allegations not included in prior pleadings.  Brown alleged a series of three fraudulent transfers:  First, she alleged Zive had assigned his interest in the promissory note to Phoenix Realty for no consideration and caused Phoenix Realty to purchase Brown's home at the foreclosure sale in an effort to prevent any interest in the property from being used to satisfy any judgment Brown might obtain in *Brown I*.[4]  Second, after the jury verdict in Brown's favor in *Brown I*, but before judgment had been entered, Phoenix Realty transferred the property to Lanker Partnership without

_____

[4]     As discussed, the complaint in *Brown I* was filed in June 2010 and the assignment to Phoenix Realty and subsequent foreclosure sale took place in September 2011.

consideration to prevent the property from being used to satisfy the forthcoming judgment.[5]  Third, after judgment was entered in *Brown I*, Lanker Partnership transferred the property without consideration to H5 Dev. to further hinder Brown's collection efforts.[6]

The Zive parties and Menahem demurred to the second amended complaint on December 3, 2013, and Brown filed an opposition on April 10, 2014.  The trial court overruled the demurrer on April 23, 2014.

### 5. *The Intervening Bankruptcies*[7]

#### a. *The Zive bankruptcy proceedings*

On February 24, 2014, while the Zive parties' demurrer to the second amended complaint was pending, Zive filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code (Chapter 13).  Zive filed a request for voluntary dismissal on April 9, 2014, and the case was dismissed on April 14, 2014.  It does not appear that notice of the

---

[5]     The jury returned its verdict in *Brown I* in early May 2013.  The transfer of the property from Phoenix Realty to Lanker Partnership took place on May 21, 2013.  Judgment was entered in *Brown I* on June 13, 2013.

[6]     The record does not contain information regarding the date of the alleged transfer to H5 Dev.  However, as is crucial to the issues on appeal, it is undisputed Lanker Partnership owned the property as of the filing of its bankruptcy petition in 2015.

[7]     Deutsche Bank requested we take judicial notice of five documents filed in the Zive, Vaca Partnership and Lanker Partnership bankruptcy proceedings.  Because those documents are either already in the record and/or are not necessary to our resolution of the appeal, we deny the request.

bankruptcy proceeding was filed in this action;[8] nevertheless, no documents were filed in this case between the filing of Zive's bankruptcy petition and the request for dismissal.

Zive filed a second voluntary petition for relief under Chapter 13 on November 13, 2014 and filed a notice of the resulting automatic stay in these proceedings on December 19, 2014. The bankruptcy petition was dismissed on February 6, 2015 after Zive failed to appear at a meeting with creditors.

b. *The Lanker Partnership bankruptcy proceeding*

On July 12, 2015 Lanker Partnership filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (Chapter 11). The schedules filed in the bankruptcy proceeding identified the Lankershim property as property of Lanker Partnership.

On August 10, 2016 Brown, again represented by counsel, filed a notice of bankruptcy and automatic stay in this action informing the trial court of Lanker Partnership's bankruptcy proceeding and its claimed interest in the Lankershim property. The docket reflects that, on August 16, 2016, this action was placed on "special status" for a "Bankruptcy Stay."

On October 20, 2017 Brown filed a document titled "Notice that Action Remains Stayed," informing the court that "the bankruptcy stay with respect to defendant Lanker Partnership remains in effect and this matter remains stayed."

On October 24, 2017 counsel for the Zive parties sent a letter to Brown's counsel stating, "The bankruptcy of Lanker is

---

[8]     A notice of Zive's bankruptcy filing and resulting automatic stay of proceedings was filed in *Brown I*.

8

still 'pending,' therefore, the automatic stay prevents the court from taking further action (other than continuances). [¶] Please confirm that this is your understanding of the nature of the case." Two days later the Zive parties filed a document titled "Notice of Bankruptcy Pending," in which they informed the trial court, "[T]he related bankruptcy action of Lanker Partnership . . . is still pending" and, as a result, requested the trial court continue trial in this matter for at least six months.

On June 7, 2018 the bankruptcy court granted Lanker Partnership's motion to dismiss its bankruptcy proceeding and dismissed the action.

On July 10, 2018 Brown filed an ex parte application to continue the trial date in this case to allow for discovery she had been unable to conduct while the bankruptcy stays were in effect. Brown stated, "This matter has been repeatedly stayed as a result of . . . Youval Zive filing two petitions for bankruptcy, as well as bankruptcy filings by Lanker Partners[ship] . . . ."

The docket reflects the special status due to the bankruptcy stay was extinguished on August 3, 2018.

c. *The Vaca Partnership bankruptcy proceeding*

On January 11, 2018, while the Lanker Partnership bankruptcy proceeding was ongoing, Vaca Partnership filed a voluntary petition for relief under Chapter 11. The bankruptcy court granted the trustee's motion to dismiss the petition, and the case was dismissed on March 5, 2018.

6. *Amendments To Substitute Doe Defendants*

On August 7, 2015 Brown filed form amendments to the complaint substituting Deutsche Bank National Trust Company,

9

Adi Perez and Erik Imas in place of three Doe defendants.[9]  Perez and Imas are the owners of Lanker Partnership.  Deutsche Bank appears to be the successor in interest to the holder of one of the notes executed by Zive and secured by the Lankershim property.

7.  *The Motion To Dismiss*

On April 3, 2019 the Zive parties moved to dismiss this action pursuant to sections 583.310 and 583.360 on the ground Brown had failed to bring the lawsuit to trial within five years, even as extended by the Zive and Vaca Partnership bankruptcies. The Zive parties argued the Lanker Partnership bankruptcy did not toll the five-year deadline because the second amended complaint named "Lanker Partners" as a defendant rather than Lanker Partnership.  Further, even if Lanker Partnership had been a party to the action, the Zive parties argued, any stay resulting from that bankruptcy proceeding would apply only to the bankruptcy debtor and not to the other defendants.

On April 16, 2019 Deutsche Bank filed a notice of joinder in the motion to dismiss.  Perez also joined in the motion during the hearing on May 8, 2019.

After hearing argument the trial court granted the motion to dismiss the case, agreeing with the Zive parties, Deutsche Bank and Perez's position that the "bankruptcy stays only tolled the five-year period as to the bankrupt parties, and there was a

---

[9]     Brown also filed a form amendment substituting Quality Loan Service Corporation in place of a Doe defendant.  Quality Loan filed a declaration of nonmonetary status pursuant to Civil Code section 2924*l*, stating it had been named solely in its capacity as trustee and not due to any acts or omissions on its part.  Brown did not object to the declaration, and it appears Quality Loan Service has not participated in the litigation.

possibility of trial as to codefendants, during the five-year period limit to get to trial." The court dismissed the complaint with prejudice in its entirety. An order of dismissal was entered on May 16, 2019 and a judgment on July 2, 2019.

8. *Brown's Motion for Reconsideration*

On June 3, 2019, before judgment had been entered, Brown filed a motion for reconsideration pursuant to section 1008, arguing she had learned after the motion to dismiss hearing that Lanker Partnership had purportedly transferred the Lankershim property in April 2019. Brown also argued the five-year limit for the claims against Deutsche Bank and Perez did not begin to run until they were added by amendment to the complaint. Brown argued she had not been able to raise this issue in her opposition to the motion to dismiss because the joinders by Deutsche Bank and Perez had not put her on notice of their position.

The Zive parties, Deutsche Bank and Perez[10] opposed the motion for reconsideration, arguing Brown had failed to present any new or different facts that could not have been submitted prior to the court's ruling, nor would the purportedly new facts necessitate a different outcome.

The motion for reconsideration was denied on August 29, 2019.

---

[10] In his declaration in support of his opposition, Perez stated, "Soon after I was named as a defendant in this action, the matter was stayed due to a Chapter 11 Bankruptcy filling [*sic*] around the middle of 2016. The Chapter 11 Bankruptcy was dismissed on June 7, 2018."

## DISCUSSION

1. *Sections 583.310 and 583.340 and the Standard of Review*

Section 583.310 provides, "An action shall be brought to trial within five years after the action is commenced against the defendant." In computing the five-year period within which an action must be brought to trial, however, "there shall be excluded the time during which any of the following conditions existed: [¶] (a) The jurisdiction of the court to try the action was suspended. [¶] (b) Prosecution or trial of the action was stayed or enjoined. [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile." (§ 583.340.) Dismissal is mandatory if the requirements of section 583.310 are not met and an exception provided by statute does not apply. (§ 583.360, subd. (b); *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1090 (*Gaines*); see *McDonough Power Equipment Co. v. Superior Court* (1972) 8 Cal.3d 527, 530.)

"[I]in construing these provisions the policy favoring trial or other resolution on the merits is generally to be preferred over the policy requiring dismissal for failure to prosecute." (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 693; see § 583.130 ["the policy favoring trial or other disposition of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action in construing the provisions of this chapter"].) Accordingly, the tolling provisions of section 583.340 must be liberally construed. (*Dowling*, at p. 693.)

The interpretation of section 583.340 and any relevant federal bankruptcy statutes are questions of law, which we review de novo. (See *Gaines*, *supra*, 62 Cal.4th at p. 1100 [trial

court's conclusions of law in applying section 583.340 are reviewed de novo]; *In re Marriage of Vaughn* (2018) 29 Cal.App.5th 451, 455-456 [interpretation of federal bankruptcy statutes is a question of law subject to independent review]; *Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 324 [trial court's interpretation of section 583.340 is reviewed de novo].)  To the extent the trial court's order is based on its evaluation of factual matters relating to whether the prosecution of the action was impossible, impracticable or futile under section 583.340, subdivision (c), we review that ruling for abuse of discretion.  (See *Gaines*, at p. 1100; *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 731 (*Bruns*).)

### 2. *The Trial Court Erred in Dismissing the Quiet Title and Fraudulent Conveyance Causes of Action*

#### a. *Relevant federal bankruptcy law*

"Upon the filing of a bankruptcy proceeding, federal bankruptcy law imposes an automatic stay on all state and federal proceedings outside the bankruptcy court against the debtor and the debtor's property.  [Citations.]"  " 'The automatic stay is self-executing and is effective upon filing the bankruptcy petition.  [Citation.]' [Citation.]  Section 362(a)(3) of title 11 of the United States Code provides for an automatic stay of 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.' " (*Shaoxing County Huayue Import & Export v. Bhaumik* (2011) 191 Cal.App.4th 1189, 1196; accord, *Kertesz v. Ostrovsky* (2004) 115 Cal.App.4th 369, 373 [section 362(a) "stays a wide range of actions that would affect or interfere with property of the estate, property of the debtor or property in the custody of the estate"].)

"'Section 362 is "*extremely broad* in scope" and "should apply to *almost any type* of formal or informal action against the debtor or the property of the estate."'" (*Kertesz,* at p. 374.)

"The purpose of the automatic stay '"is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions. [Citations.] The automatic stay also prevents piecemeal diminution of the debtor's estate."'" (*Cavanagh v. California Unemployment Ins. Appeals Bd.* (2004) 118 Cal.App.4th 83, 90; accord, *In re Levine* (C.D.Cal. 2018) 583 B.R. 231, 235 ["the automatic stay helps ensure the orderly distribution of estate property in a way that will maximize the benefit to creditors"].)

### b. *The Lanker Partnership bankruptcy stayed the quiet title and fraudulent conveyance causes of action*

The parties dispute whether the automatic stay triggered by the Lanker Partnership bankruptcy applied to the other defendants in this lawsuit and, therefore, whether the time the stay was in place should have been excluded from the trial court's calculation of the five-year period under section 583.340, subdivision (b).

Absent any extensions or exclusions, the five-year period in which Brown was required to proceed to trial terminated on December 13, 2016. However, the period after the case had been dismissed and before the trial court vacated that dismissal (146 days)[11] must be excluded, as it was impossible for Brown to

---

[11] The order of dismissal was entered on April 18, 2013, and the motion to vacate the dismissal was granted on September 11, 2013.

have proceeded during that time.[12]  That exclusion extended the expiration of the five-year period to May 8, 2017.

The Lanker Partnership bankruptcy proceeding was filed on July 12, 2015 and dismissed on June 7, 2018, resulting in an automatic stay of 1,061 days.  If the Lanker Partnership bankruptcy stayed this action, as Brown contends, the resulting expiration of the five-year period for Brown to bring the case to trial concluded on April 3, 2020, making the dismissal under section 583.310 almost one year premature.[13]

The trial court's finding the Lanker Partnership bankruptcy stay did not apply here was based solely on its determination the bankruptcy stay applied to actions against the debtor only and not to actions against the non-debtor

---

[12]     Deutsche Bank and Perez do not directly address Brown's argument the time between the case's dismissal and reinstatement must be excluded from the five-year period's calculation.  Given that the dismissal ended the litigation (at least temporarily), there can be no reasonable argument against excluding that time pursuant to section 583.340, subdivision (c). (See *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 438 ["there are some circumstances in which it can be said almost invariably that [tolling for impossibility] applies.  Such is the case when a default judgment has been entered in favor of the plaintiff, effectively bringing the litigation to a standstill"].)

[13]     Given our conclusion the Lanker Partnership bankruptcy stay applied to the quiet title and fraudulent conveyance causes of action and is dispositive in determining the issue on appeal as to those claims, we need not determine whether or to what extent the Zive and Vaca Partnership bankruptcy stays may have also extended the five-year period.

codefendants.[14] The trial court was correct that "the general rule is that bankruptcy stays only toll the five-year period as to the bankrupt." (*Santa Monica Hospital Medical Center v. Superior Court* (1988) 203 Cal.App.3d 1026, 1036.) However, the plain language of the statute is broader than the general rule might suggest: The automatic stay applies to all actions against or seeking possession of debtor property. (See 11 U.S.C. § 362(a)(2) & (3).) This is true for lawsuits against non-debtor defendants, even those in which the debtor is not a party. (See *In re Levine, supra,* 583 B.R. at p. 237 [automatic bankruptcy stay applied to bank's action against non-debtor where debtor had interest in real property sought by bank; "Bank cannot take enforcement actions against the Real Properties without also affecting the bankruptcy estate's property rights. Accordingly, the Real Properties fall entirely within the scope of the automatic stay"]; *In re Franco* (Bankr. D.N.M. 2017) 574 B.R. 730, 740 [action seeking to quiet title in mineral rights against debtor and others was subject to automatic stay]; *In re Saint Vincents Catholic Medical Centers of New York* (S.D.N.Y. 2011) 449 B.R. 209, 217 ["the automatic stay provision is not limited solely to actions against the debtor, but rather bars actions . . . even against third-parties that would have an adverse impact on the property of the estate"].)

Here, Brown's quiet title cause of action alleged, "[N]one of the defendants . . . had any right to title or interest in the subject

---

[14] Even presuming this analysis were correct, it is not clear on what basis the claims against Lanker Partnership could have been dismissed pursuant to section 583.310 given that the trial court appeared to agree the action had been stayed as to Lanker Partnership.

property and no right to entertain any rights of ownership" and sought "a judicial declaration that the title to the Property is vested in plaintiff alone." The fraudulent conveyance cause of action alleged Lanker Partnership had received the property as part of a scheme to hinder Brown from collecting on a judgment and sought "[a]voidance of the purported transfers of the Property to [Phoenix Realty and Lanker Partnership] and H5," an "injunction against further disposition of the Property or its proceeds," and that Brown "be allowed to levy execution of the judgment in [*Brown I*] on the Property." Given that Lanker Partnership listed the Lankershim property as an asset in its bankruptcy filings, there can be no doubt these two causes of action fall squarely within the Bankruptcy Code's prohibition of proceedings against, or to obtain possession of, a debtor's property.[15] In fact, none of the defendants objected to Brown's repeated filings from 2016 to 2018 informing the trial court this action was stayed in its entirety due to the Lanker Partnership's

---

[15] As discussed, neither Deutsche Bank nor Perez addressed the bankruptcy stay's applicability to actions involving the debtor's property, but they instead focus their arguments on the improbable claim Lanker Partnership is not a defendant in the action because it was not correctly named in the caption of the second amended complaint (although it was properly identified in the body of the pleading) and because Brown did not have the trial court's permission to add a new party to the second amended complaint (although the court rejected that argument in ruling on the demurrer to the second amended complaint). Regardless, whether Lanker Partnership is a party to the proceeding is not relevant to the analysis whether the action is stayed because it seeks property of a bankruptcy estate. (See *In re Levine, supra*, 583 B.R. at p. 237.)

bankruptcy proceeding, and the Zive parties' attorney recognized the stay in a letter to counsel and subsequent filing in 2017. Even Perez's declaration submitted in 2019 recognized the matter had been stayed.[16]  Accordingly, the automatic bankruptcy stay applied to those causes of action and the length of time the stay was in effect should have been excluded by the trial court from its calculation of the five-year period in which Brown was required to bring the case to trial.

3. *Remand Is Necessary for the Trial Court To Reconsider the Motion To Dismiss Regarding the Fraud Cause of Action*[17]

a. *Section 583.340, subdivision (c)*

"Under 583.340(c), the trial court must determine what is impossible, impracticable, or futile 'in light of all the

---

[16]  While Brown did not argue estoppel in opposition to the motion to dismiss or on appeal, the defendants' apparent prior recognition of the automatic stay certainly undermines their arguments in favor of dismissal.

[17]  The record reflects the second amended complaint alleged fraud against Menahem, Phoenix Realty and the Doe defendants, which includes Deutsche Bank and Perez because they were substituted for Doe defendants.  The demurrer to the second amended complaint was overruled.  In the appellant's opening brief Brown states the fraud cause of action was alleged against only Menahem and Phoenix Realty.  During oral argument, Brown's counsel stated the fraud claim was no longer at issue in the case.  The dismissal pursuant to section 583.310 refers to the second amended complaint in its entirety and does not distinguish among the causes of action.  If in fact the fraud cause of action has been eliminated, the trial court will have no need to reconsider the motion to dismiss on remand.

circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' [Citations.] A plaintiff's reasonable diligence alone does not preclude involuntary dismissal; it is simply one factor for assessing the existing exceptions of impossibility, impracticability, or futility. [Citation.]" "Determining whether the subdivision (c) exception applies requires a fact-sensitive inquiry and depends 'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles.' [Citation.] '"[I]mpracticability and futility" involve a determination of "*excessive and unreasonable difficulty or expense*,"' in light of all the circumstances of a particular case.'" (*Bruns*, *supra,* 51 Cal.4th at pp. 730-731; see also *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 438.)

In determining whether a cause of action is impossible, impracticable or futile the trial court must consider "a great variety of factors, including, among others, the expense, complexity, and quantity of the evidentiary duplication that severance would entail, the potential problems that inconsistent judicial determinations would produce, and the degree of hardship or prejudice to the defendants occasioned by the delay." (*Brunzell Constr. Co. v. Wagner* (1970) 2 Cal.3d 545, 554, fns. omitted; accord, *Dowling v. Farmers Ins. Exchange*, *supra,* 208 Cal.App.4th at p. 698.)

"The plaintiff bears the burden of proving the circumstances justifying application of section 583.340,

subdivision (c)'s exception for impossibility, impracticability or futility." (*Martinez v. Landry's Restaurants, Inc.* (2018) 26 Cal.App.5th 783, 794; accord, *Bruns, supra*, 51 Cal.4th at p. 731.) "[A] condition of impossibility, impracticability, or futility need not take the plaintiff beyond the five-year deadline to be excluded; it will be excluded even if the plaintiff has a reasonable time remaining after the period to bring the case to trial." (*Gaines, supra*, 62 Cal.4th at p. 1101.) However, the plaintiff must establish a causal connection between the claimed circumstances of impracticability and the failure to proceed to trial. (*Ibid.*; see *De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 372; *Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 328.)

"'The question of impossibility, impracticability, or futility is best resolved by the trial court, which "is in the most advantageous position to evaluate these diverse factual matters in the first instance."'" (*Gaines, supra,* 62 Cal.4th at p. 1100 & fn. 8.) Accordingly, as discussed, we review for an abuse of discretion the trial court's determination not to exclude periods during which plaintiff contends it was impossible, impracticable or futile to bring the action to trial within the meaning of section 583.340, subdivision (c). (*Gaines*, at p. 1100 & fn. 8.)

> b. *The trial court erred by failing to consider the potential impact of the Lanker Partnership bankruptcy on the fraud cause of action*

To reiterate, in the second amended complaint Brown alleged generally that Menahem, Phoenix Realty, Deutsche Bank and Perez committed fraud by misrepresenting material facts in connection with Brown's purchase of the Lankershim property and then foreclosed on the property with knowledge of the

fraudulent transaction.  As a result, Brown alleged, she suffered economic and noneconomic damages and sought compensatory and punitive damages.  Accordingly, the fraud cause of action did not directly seek possession of the Lankershim property and therefore was not subject to the automatic stay triggered by the Lanker Partnership bankruptcy.  The trial court did not err in failing to exclude the Lanker Partnership bankruptcy stay from its calculation of the five-year period pursuant to section 583.340, subdivision (b), in relation to the fraud claim.

However, this does not end the analysis.  "A circumstance that does not qualify for automatic tolling under section 583.340(b) may nonetheless be excludable from the five-year period if the circumstance makes it 'impossible, impracticable, or futile' to bring the action to trial." (*Gaines, supra,* 62 Cal.4th at p. 1100.)  Brown argues, albeit in a conclusory fashion, that it would have been impracticable to try any of her claims against the defendants while Lanker Partnership claimed title to the property in its ongoing bankruptcy proceeding.

Because the trial court found as a matter of law that the bankruptcy stay did not apply, it failed to consider whether section 583.340, subdivision (c)'s exception for impracticability applied to a separate trial on the fraud cause of action due to duplicative expenses and possibly inconsistent legal rulings or factual findings.  It is appropriate for the trial court to consider those issues in the first instance.[18]  (See *Dowling v. Farmers Ins.*

---

[18]     Because we reverse on the quiet title and fraudulent conveyance causes of action and remand for the trial court to reconsider the motion to dismiss as to the fraud cause of action,

21

*Exchange, supra,* 208 Cal.App.4th at p. 699 [remanding for trial court to "exercise its discretion by deciding whether the particular circumstances of this case, common legal questions and practical realities made it impracticable or futile to bring this case to trial"].)

## DISPOSITION

The judgment and order granting the motion to dismiss are reversed, and the cause remanded with directions to enter a new order denying the motion to dismiss as to the causes of action for quiet title and fraudulent conveyance, to reconsider the motion as to the cause of action for fraud and for further proceedings not inconsistent with this opinion. Brown is to recover her costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

---

we need not reach Brown's argument the court erred in denying her motion for reconsideration.